# COUNTY OF KENNEBEC

## ALFRED BATES *versus* THE ANDROSCOGGIN & KENNEBEC RAILROAD COMPANY.

A railroad corporation voted to issue preferred stock on the following condition, viz. : —

" So much of the net earnings of the road as may be necessary, after paying interest to the bondholders, shall be applied to the payment of twelve *per cent.*, in semi-annual dividends of six *per cent.* each, to the holders of stock thereby created, until the net earnings shall be sufficient to pay an interest of six per cent. on the stock, and all the bonds issued of the first and second loans." Thereupon the directors issued certificates of stock in common form, with the following certificate upon the back, signed by the president and treasurer : — "*Preferred Stock.* This certificate is for preferred stock created July 10, 1849, and entitles the holder, from the net earnings of the road, to the payment of six dollars per share semi-annually, until the net earnings of the road shall be sufficient to pay an interest of six *per cent. per annum* on all the stock issued, and all the bonds issued for the first and second loans : "—*Held* —

1. That the corporation, as a consideration for taking the stock, agreed to pay thereon twelve per cent. in semi-annual dividends of six per cent.

2. That the term "semi-annual dividends " was not used in a technical sense, but as equivalent to semi-annual payments.

3. That these payments depended on no contingency, except that the net earnings of the road, after paying interest to the bondholders, should be sufficient for paying them.

4. That *an entire year* must be taken as the period during which the net earnings should be sufficient to pay six per cent. on the bonds and all the stock, to determine when this contract was to cease.

5. That in an action upon this contract, the fact that the plaintiff was a holder of the shares may be proved by other evidence than the certificates of stock.

6. That the certificates of stock are not the basis of an action for the dividends, but merely evidence of the ownership of the shares.

7. That these certificates are not, in such an action, the *substance of the issue,* nor matters of essential description, and therefore, although the plaintiff professes to set them out in his declaration, *according to their tenor,* the law does not require their exclusion as evidence, in consequence of verbal inaccuracies or omissions.

Bates *v.* The Androscoggin & Kennebec R. R. Co.

8. That in such an action for several dividends, it is not sufficient to allege that the plaintiff took and paid for the stock, and at the commencement of the action was the holder thereof, but the declaration must show that he continued to be the holder during the time covered by the action.

9. That no question as to the sufficiency of the declaration having arisen upon the pleadings, and it not appearing that the defendants had suffered any inconvenience on account of the defect, the plaintiff should be permitted *by the law Court* to amend without terms.

10. That, after the plaintiff had transferred the stock by an assignment upon the back of the certificates, no action can be maintained in his name for dividends subsequently accruing, although such transfer has never been recorded.

11. But that he may recover such portion of the semi-annual dividend as the time, he was the holder of the stock, is of six months.

12. That the plaintiff cannot recover for the last six months of the year, at the end of which the contract ceases.

13. And that the corporation are estopped from denying that the meetings, at which these votes were passed, were legally called.

ON REPORT.

DEBT to recover ten semi-annual dividends on ten shares of preferred stock, at the rate of six dollars per share, amounting in the whole to six hundred dollars, from January 1, 1852, to January 1, 1857.

Plea *nil debet.*

The declaration was made a part of the case, but it is sufficiently stated in the opinion to show the questions raised upon it.

The plaintiff offered in evidence two certificates of stock, in the defendant corporation. It was admitted by defendants that the certificates were under the seal of the corporation, and by plaintiffs that the transfer on the back was executed when dated, and that they were then delivered to Eaton and Parker.

The plaintiff put in evidence the records of the directors of the company, by which it appeared that Timothy Boutelle was president and Samuel P. Benson treasurer of the company, on the 5th day of April, 1850, and Samuel Taylor, Jr., president, and Isaac Redington treasurer, on the 13th day of October, 1851.

The plaintiff offered in evidence certain portions of the

records of the corporation; of a meeting held on the 3d of July, 1849, and of another meeting on the 21st of August, 1849, and the calls for these meetings, and certain portions of the records of the directors, of meetings held on the 10th of July, and August 22, 1849, and of January 31, 1850.

The plaintiff also put in evidence a book produced by the defendants on notice therefor, showing "interest made up on preferred stock to January 1, 1852," and also proved that no dividends on preferred stock have been made up since January 1, 1852.

It was admitted by the defendants that the name of the plaintiff was borne on the stock ledger as owner of ten shares of the preferred stock of the company at the time said certificates were issued.

It was agreed by the parties that the whole amount of preferred stock, issued by the company, was 2,620 shares, amounting to $262,000, and that the whole amount of the first and second issue of bonds was $550,000:

The plaintiff then put in evidence the printed reports of the directors and treasurer of the company, for each year, from 1849 to 1857, inclusive, notice having been given to defendants to produce the originals, but which were not produced, and the clerk of the company having testified that the original written reports had not been preserved and were not recorded, nor returned by the printer to whom they had been given for publication. It was admitted by defendants that the printed copies offered were true and accurate copies of the originals.

From these reports it appeared that the net earnings of the company were as follows, viz. :—

For the year ending June 1, 1851,          $39,097,86
"          "          "    1852,              67,579,76
"          "          "    1853,              79,953,43
"          "          "    1854,              93,370,42

The whole amount of capital stock, original and preferred,

as appears by the reports, was, in June 1853, $812,478,47; in June 1852, $789,988,22; and in June 1854, $687,276,64.

It was admitted by the defendants, that S. Heath, Esq., in behalf of the holder of the certificates, the same having been delivered to him by Joseph Eaton for that purpose, in January, 1857, prior to the bringing of this action, demanded of the treasurer of the company payment of the several dividends sued for; but the payment of the same was refused; and that none have ever been made, except those accruing prior to January 1, 1852.

The defendants then put in evidence tending to show that, for the six months preceding January 1, 1852, the net earnings of the road were sufficient to pay an interest of six per cent. on the stock, and all the bonds issued for the first and second loans; but in the view of the case taken by the Court, it did not become material.

The case was thereupon taken from the jury by consent, and submitted to the full Court upon the evidence legally admissible, the whole having been received by agreement, subject to all legal objections, to render judgment by nonsuit or default.

Copy of certificates introduced in evidence by plaintiff.

"Androscoggin and Kennebec Railroad Company.

"No. 487.                                                  8 shares.

"Be it known, that Alfred Bates, of Thomsonville, Connecticut, is proprietor of eight shares in the capital stock of the Androscoggin and Kennebec Railroad Company, subject to the provisions of the charter and the by-laws of the corporation, the same being transferable by an assignment thereof in the books of said corporation, or by a conveyance in writing recorded in said books. And when a transfer shall be made or recorded in the books of the corporation, and this certificate surrendered, a new certificate or new certificates will be issued.

"Dated at Waterville, this fifth day of April, A. D. 1850.

[L. s.]                    "T. Boutelle, President,
                           "Samuel P. Benson, Treasurer."

On the back of said certificate is the following : —

"Preferred Stock. This certificate is for preferred stock, created July 10, 1849, and entitles the holder, from the net earnings of the road, to the payment of six dollars per share, semi-annually, until the net earnings of the road shall be sufficient to pay an interest of six per cent. per annum on all the stock issued, and all the bonds issued for the first and second loans. "T. Boutelle, President,

"Samuel P. Benson, Treasurer."

"Shares. Androscoggin & Kennebec Railroad Company.

"For value received, I hereby transfer to Joseph Eaton and S. S. Parker, of Winslow and Waterville, eight shares of the capital stock of the Androscoggin & Kennebec Railroad Company, subject to all the assessments and to the provisions of the charter and to the by-laws of the corporation.

"Dated at Waterville, this 19th day of March, A. D. 1852. Alfred Bates.

"Witness : — James Stackpole, Jr."

Also a certificate issued to plaintiff in all respects similar to the preceding with these exceptions — "No. 815, for two shares, dated October 13, 1851, and signed Samuel Taylor, Jr., president, Isaac Redington, treasurer."

On the back was the same as the preceding with the exception of the signatures.[*] The second was signed in this manner : — "————, president, I. Redington, treasurer."

Extract from the stockholders' records of July 3, 1849.

"Mr. Moor presented a plan for increasing the subscription to the capital stock of the company.

"Judge Ware presented a plan for the same purpose, which was amended on motion of Mr. Anderson — which were severally discussed at length, and

" *Voted*, That the plans aforesaid be severally referred to the board of directors, with power to adopt either, with such modifications as they may think proper, to increase the cap-

---

[*] The Court understood this as not referring to the assignment upon the first certificate.

ital stock of the company, and to raise the necessary funds to complete and equip the road."

Extract from directors' records of July 10, 1849.

"The plans presented at the annual meeting of the stockholders, held July 3, 1849, for obtaining funds to complete and equip the road, having been considered,

*Voted,* That the following terms of subscription to the capital stock of the company be adopted by the board, viz. :

"Androscoggin and Kennebec Railroad Company. We, the undersigned, stockholders in the Androscoggin and Kennebec Railroad Company, and others, agree to take and pay for the number of shares set to our names, at $100 a share, by paying the money therefor, or giving our notes payable in four, eight and ten months, on the following conditions, viz. : —

"So much of the net earnings of the road as may be necessary, after paying interest to the bondholders, shall be applied to the payment of twelve per cent., in semi-annual dividends of six per cent. each, to the holders of stock hereby created, until the net earnings of the road shall be sufficient to pay an interest of six per cent. on the stock and all the bonds issued for the first and second loans."

Extract from the records of a meeting of stockholders, holden by adjournment, August 21, 1849.

" *Voted,* That the plan adopted by the board of directors in creating three thousand shares of preferred stock, at their meeting July 10, 1849, be ratified and confirmed by the stockholders."

Extract from directors' records of August 22, 1849.

" *Voted,* That· the certificates for the stock created July 10, 1849, in addition to the form prescribed by the by-laws, bear upon the back the following words, subscribed by the president and treasurer, viz. : —

"Preferred Stock. This certificate is for preferred stock, created July 10, 1849, and entitles the holder, from the net earnings of the road, to the payment of six dollars per share, semi-annually, until the net earnings of the road shall be

Bates *v.* The Androscoggin & Kennebec R. R. Co.

sufficient to pay an interest of six per cent. per annum on all the stock issued, and all the bonds issued for the first and second loans.                                    "President.

                                                "Treasurer."

Extract from Directors' records of January 31, 1850.

"*Voted*, That the interest on the preferred stock be made up on the first days of June and December, annually, as said stock shall stand on the books of the corporation on those days."

*W. S. Heath*, for plaintiff.

I. The contract declared on is binding on the corporation. Redfield on Railways, p. 593, and cases cited in notes pp. 564, 575.

II. By that contract the plaintiff should recover.

1. By that contract he should have received a payment of $12 annually upon each share of *preferred* stock until he should receive a dividend of six per cent. upon the same as *original* stock.

2. At least the contingency contemplated in the contract could not happen until the net earnings of the company were enough for an *annual*, not a *semi-annual* dividend.

3. By either construction the company ceased to make the stipulated payment before the contract terminated.

*Drummond*, (with whom was *J. S. Abbott*,) for defendants.

I. The plaintiff cannot recover because he was not the holder of the stock during the time the dividends sued for were accruing. They were payable semi-annually to the holder of the stock *at the time they were due.* They were not *divisible.* If one man was the holder of the stock for the first quarter of the year and then transfers it, he cannot recover at all. If so, then the absurdity would follow, that if the stock should be transferred on every day of the six months, the defendants would be liable to as many actions as there are days in that time ! If it can be appor-

tioned into halves, it may be into hundredths. But this cannot be done.

The plaintiff transferred the stock on March 19, 1852, to Eaton and Parker, before one dividend became due. They were the holders of the stock July 1, 1852, when the dividend became due, and they alone càn sue for it.

The transfer without record changed the title to all except subsequent purchasers or attaching creditors. c. 81, § 22, R. S., 1841; 2 Greenl. Cruise, 487, and cases cited.

It is said that the certificates are *choses in action.* But they are only evidence of title, and not conclusive evidence. One may be the owner of the shares, and another hold the certificate. *Agricultural Bank* v. *Burr*, 24 Maine, 256; *same* v. *Wilson*, 24 Maine, 573. ·

Dividends follow the title at the time they are made. The plaintiff not having the title at that time cannot recover.

II. The plaintiff cannot recover, on the ground of variances between the contract declared on and the one attempted to be proved.

1. The certificates are declared on according to their "tenor." This requires an exact copy to be set out, and must be strictly and literally proved. 1 Greenl. Evidence, § 69.

The certificates declared on are not under seal; those offered in evidence are; and other differences are apparent.

2. There is a more important variance. The declaration sets out the contract according to the memorandum on the back of the certificate. This memorandum has never been adopted by the corporation. The vote of the corporation creating this stock is essentially different. The memorandum pledges the *whole of the net earnings* to the payment of these dividends; the vote, *only the surplus after paying bondholders.* If the net earnings were just twelve per cent. of the preferred stock, by the contract *declared on*, the preferred stockholders would be entitled to it all; by the contract *proved*, to none of it.

III. No action *at law* can be maintained for these dividends. Until dividends are declared the fund is *joint.*

When dividends have been declared and demanded, an action for money had and received will lie to recover them, because, in equity and good conscience, they belong to the stockholder. *Kane* v. *Bloodgood*, 7 Johns. Ch. R., 108, 129–132; *Ellis* v. *Merrimac Bridge*, 2 Pick., 243, 248.

The dividends are not made certain. The fund to be divided is the surplus of the net earnings after paying the interest to bondholders. It is a joint fund of which the plaintiff is entitled to his *pro rata* share. The amount of it is a question of fact for the jury to find. All the stockholders are interested in the question. They should be parties to the suit. Otherwise the fund may be exhausted before all are paid. Or they may be paid in different proportions.

IV. Another difficulty arises. The holders of this preferred stock are not *creditors* of the corporation. They are merely *stockholders*. They have a preferred claim to the dividends. But they have no claim unless there are dividends. There cannot legally be a dividend until there are profits and the floating debts are paid. The net earnings belong to the *creditors* and not to the *stockholders*, whether preferred or otherwise. Redfield on Railways, 597, 598.

V. The plaintiff is not entitled to recover, because the contingency which was to terminate his dividends, occurred January 1, 1852, before any dividends now sued for are alleged to have accrued.

That contingency was to happen when the net earnings should become sufficient to pay six per cent. on the stock, and the bonds of the first and second loan.

By "the stock," the parties must mean the stock outstanding at any given time.

It appears that, for the six months prior to January 1, 1852, the net earnings were sufficient to pay at the rate of six per cent. per annum on the stock then outstanding, and all the bonds. This, the plaintiff does not dispute, but claims that the contingency cannot happen until six per cent. is actually paid on all the stock—or, at any rate, that *one year* must be taken as the test instead of six months.

But dividends are universally declared semi-annually. All these votes, &c., provide for semi-annual payments.

Again, the contingency happens at the *beginning* of the period taken as a test, whether it is six months or a year. If, at the end of a year, it appears that the net earnings have been sufficient to pay six per cent. on the stock and bonds, the surplus, after paying bondholders, belongs to *all* the stockholders. The preferred stockholders cannot claim it. But one dividend, (if a year is assumed as the basis) has been paid to them during the year to which they are not entitled. A construction that leads to this result cannot be allowed. Assuming six months as the basis, it can be determined whether the earnings have been sufficient to pay at the rate of six per cent. on the stock and bonds. If they have not, the preferred stockholders are entitled to them. If they have, the contingency has happened and the twelve per cent. dividends cease.

VI. The tables show, that for the year ending July 1, 1854, the net earnings were sufficient to pay six per cent. on all the stock and all the bonds for first and second loans. At all events, this answers the condition. At the worst, the plaintiff can recover only to and including July 1, 1853, for the net earnings of the subsequent year belong, as above shown, to all the stockholders.

*Evans,* for plaintiff, in reply.

The opinion of the Court was drawn up by

Rice, J.—An examination of the terms of the contract between the parties upon which the action is based, in the light of the surrounding circumstances, will leave no doubt as to its construction, nor as to the intention of the parties at the time of its inception. The defendants are a corporation, and were, at the time the contract originated, engaged in the prosecution of a great public enterprise—the construction of a railroad from Danville to Waterville. This enterprise, which was then of a character comparatively new in this State, and involved the expenditure of large

sums of money, had, manifestly, been commenced by the corporation without accurately estimating the cost necessary for its completion. The law contemplated that a sufficient amount of stock should be subscribed, to furnish funds to enable the company to construct and equip their road. The charter was sufficiently broad and liberal in its terms to admit of the accomplishment of this object. But when a subscription to its stock, sufficient only to meet a portion of the cost of the construction of the road, had been obtained, the work of construction was commenced, and a result which ordinary sagacity could not have failed to foresee, was speedily reached. The available proceeds of the stock subscription were exhausted, debts without means to pay contracted, and the road not completed.

In this condition of things the financial skill or ingenuity of those interested in carrying forward the enterprise and completing the construction of the road, was put in requisition. Bonds for a first and second loan, amounting to more than half a million of dollars, appear to have been issued and sold in the market, and yet there was a large deficiency of funds to meet *liabilities* already incurred, and the prospective necessities of the corporation to finish their road. It was apparent that further sales of stock could not be effected on the intrinsic value of the stock itself.

In this exigency, "plans" were devised to induce existing stockholders, and others, to make additional subscriptions to the capital stock of the corporation.

These *plans* were referred to the directors, who, at a meeting of their board, held July 10, 1849, matured therefrom the following terms of subscription :—

"We, the undersigned, stockholders in the Androscoggin and Kennebec Rail Road Company, and others, agree to take and pay for the number of shares set to our names, at $100 a share, by paying the money therefor, or, giving our notes, payable in four, eight, and ten months, on the following conditions, viz. :—

"1. So much of the net earnings of the road as may be

necessary, after paying interest to the bondholders, shall be applied to the payment of twelve per cent. in semi-annual dividends of six per cent. each, to the holders of stock hereby created, until the net earnings of the road shall be sufficient to pay an interest of six per cent. on the stock, and all the bonds issued of the first and second loans."

The other conditions are not deemed material in determining the point before us.

This proposition was presented to and ratified and adopted by the stockholders of the company, at a meeting held August 21, 1849. The stock thus provided for constitutes what is denominated the "preferred stock" of the corporation, though the certificates issued therefor were in the form of the ordinary stock certificates of the company, and were only distinguishable from the ordinary stock certificates by an indorsement made upon the back thereof by the order of the directors.

This certificate was in form as follows : —

"Preferred Stock. This certificate is for preferred stock created July 10, 1849, and entitles the holder, from the net earnings of the road, to the payment of six dollars per share, semi-annually, until the net earnings of the road shall be sufficient to pay an interest of six per cent. per annum on all the stock issued, and all the bonds issued for the first and second loans," and signed by the president and treasurer.

The manifest design of this proposition for subscription was, to offer an inducement first, to the stockholders, and then to others, to take the additional stock then created, and thereby to provide the funds and money to meet the existing liabilities of the company, and to complete the construction of their road. Such is the fair import of the *plan* then adopted, and so the directors understood it, and so held it out to the world, as fully appears from the certificate by them directed to be placed upon the stock certificates, as cited above. That is, the corporation say, in substance and effect, by their *plan* for subscription, first, to their own

stockholders and then to the world, in consideration that you will subscribe for the stock now created and proposed to be issued, we will pay you twelve per cent. in semi-annual dividends of six per cent. each, until the net earnings of the road shall be sufficient to pay an interest of six per cent. on the stock and all the bonds issued for the first and second loans. This twelve per cent. was simply the consideration offered to induce parties to take the new stock, and may have been offered first, to existing stockholders, to enable them, by duplicating their subscriptions, to obtain six per cent. on their whole investment in the stock of the road.

It is evident, from an examination of the whole transaction, that the words "in semi-annual dividends," were not used in a technical sense, but were intended to mean nothing different from semi-annual payments, which payments depended upon no contingency, except that the net earnings of the road, after paying interest to the bondholders, should be sufficient to meet this obligation.

The next question of substance is, when did this contract, by its terms, terminate? The *plan* contains within itself an explicit answer to this question; "when the net earnings of the road shall be sufficient to pay an interest of six per cent. on the stock and, all the bonds issued for the first and second loan." This manifestly has reference to the annual operations of the road, and, when the earnings of the road should be sufficient to enable the company to pay an interest of six per cent. annually upon its stock and all the bonds of the first and second loans, the twelve per cent. interest promised, as a consideration for the subscription to the new stock, was to cease, and the preferred stockholders would thereafter have no rights superior to the holders of old stock; it evidently then being anticipated, that from and after such time the company would be able to pay six per cent. on its whole investment in the construction of their road. It would require the operation of an entire year, including the unfavorable as well as the favorable months for business, to test its capacity to pay six per cent. As well might that

capacity be tested by selecting the most favorable month, week, or day, even, as the six most favorable months in the year for that purpose.

As to the policy of obtaining stock subscriptions in this way, we express no opinion, nor do we herein intend to express any opinion as to the legal rights of the holders of original and preferred stock, as between themselves.

Such being the nature of the contract and the rights of the parties under it, the only remaining questions to be decided are, whether the technical objections raised are such as will defeat this action.

The action, as we have already seen, is not upon the stock, *per se*, nor technically for dividends declared upon the stock of the company, but upon a contract by which the defendants obligated themselves to pay certain specified sums, at certain times, in consideration that the plaintiff had taken stock of the company. Those payments, by the terms of the contract, are to be made to the holders of the stock. The certificates of the stock do not therefore form the basis on which the action is founded, but are only evidence tending to show, that the plaintiff was the holder of stock, out of the subscription and payment for which the contract, on which the action was brought, originated. The fact that the plaintiff took or holds stock may be proved by other competent evidence, as well as by the certificates; and the fact that the plaintiff, in his declaration, has preferred to set out these stock certificates according to their tenor, will not require their exclusion, on the ground of variance, in consequence of verbal inaccuracies or omissions, because they do not constitute the *substance of the issue*, nor are they matters of essential description. 1 Greenl. Ev., § 56. The substance of the issue before us is the agreement to pay certain sums of money to the holders of a certain issue, as capital stock in the defendant company. The certificates are introduced as evidence tending to establish the fact that the plaintiff is the holder of such stock. Evidence tending to establish the same fact is found in the express admission

of the defendants, that the name of the plaintiff was borne upon the stock book of the company, as the owner of ten shares of the preferred stock of the company, at the time the certificates were issued.

The next inquiry is, when and how long did he hold said stock.

The declaration alleges, with sufficient distinctness, that the plaintiff had taken and paid for the number of shares specified as a consideration of the promise declared on. But there is an informality in that part of both counts of the declaration, which sets out the time during which the plaintiff was the holder of such stock. After setting out the fact that he had taken and paid for stock, &c., the declaration in both counts proceeds thus, "and the plaintiff avers that he is the legal holder of said certificates." This is not a distinct affirmation, that he is and has been at all times, since the date of the certificates, or since the alleged cause of action accrued, the holder of the *stock* referred to in said certificates. But, though thus defective in technical accuracy and form, there is sufficient in the whole declaration to enable the Court rightly to understand the case, and it is therefore amendable. And, as no questions have been raised in the pleadings, as to the sufficiency of the declaration, and it not appearing that any inconvenience has been suffered by the defendants from this informality, the plaintiff may have leave to amend without terms.

The defendants, as already remarked, admit that the plaintiff was the owner of ten shares of the stock at the date of his respective certificates. The certificate for eight shares is dated April 5, 1850, and the proof is, that no payments of interest have been made since January 1, 1852. It also appears, by the transfer on that certificate, in evidence by the plaintiff, that, on the 19th day of March, 1852, he transferred to Eaton and Parker eight shares in the capital stock of the defendants' company. The fact that this written transfer, or assignment, is upon the back of the certificate issued for the stock in question, and the further fact that,

prior to the commencement of this action, Mr. Heath received the certificate from Mr. Eaton, authorizes the inference that Eaton and Parker continued to hold these eight shares of stock from the time of the transfer to them until the date of the plaintiff's writ.

Should it be objected that the transfer of the stock was incomplete, until it was entered upon the books of the company, the answer is that, as between the parties to the transfer, neither the certificate nor the statute, c. 81, § 22, required such transfer to be entered upon the books of the company to make it effectual. If so entered, a new certificate might have been issued to the transferees on the surrender of the old certificate, and their right to the stock protected against the acts of the original owner or his creditors. The plaintiff, from and after the transfer of this stock, ceased to be the holder thereof, and the defendants only promised to pay twelve per cent. to the holder. The result is, that the plaintiff is entitled to recover on his first count at the rate of twelve per cent. per annum, on eight hundred dollars, from the first day of January, 1852, to the 19th day of March in the same year.

As to the second count, there is no evidence of transfer, and the inference is authorized that the plaintiff has continued to hold it from the time the certificate was issued until the date of his writ. He is therefore entitled to recover upon that count from the first day of January, 1852, the time to which interest had been paid, until the happening of the contingency contemplated in the contract, at the same rate per cent. as in the first count. The reports do not show that this contingency occurred until July 1, 1854, and, at that time, the defendants show that the net earnings of the road, for the year then ended, had been sufficient to pay six per cent. on the stock and all the bonds issued for the first and second loans. The plaintiff was entitled to his interest semi-annually until that contingency happened. Judgment must therefore be entered for plaintiff, under the second count, for the amount of interest, at twelve per cent. per

Augusta Bank *v.* Augusta.

annum, on two hundred dollars, from January 1, 1852, to January 1, 1854.

Objection was also taken that the extracts from the records of the company do not show that the meeting of the stockholders, of July 3d, was legally called, or that it was regularly adjourned to August 21, 1849, when the vote of ratification was passed. We perceive no legal objection to the introduction of those extracts from the records, and are of opinion that, from such portion of the records as are before us, and in the absence of all evidence to the contrary, the presumption is, that the proceedings were regular. At all events, in view of the whole transaction, and all the acts of the defendants in relation to the subject matter, it is not now competent for them to take this objection.

*Defendants defaulted.*

TENNEY, C. J., APPLETON, CUTTING, MAY and GOODENOW, JJ., concurred.