## SAVANNAH REAL ESTATE, LOAN AND BUILDING COMPANY *v.* SILVERBERG.

The instrument sued on in the present case was an evidence of indebtedness, and not a certificate of preferred stock in the corporation executing it.

Submitted June 2, — Decided July 22, 1899.

Certiorari. Before Judge Falligant. Chatham superior court. December term, 1898.

*Charlton, Mackall & Anderson*, for plaintiff in error.
*W. W. Gordon Jr.*, and *Edward S. Elliott*, contra.

Cobb, J. Isadore Silverberg brought suit in a justice's court against the Savannah Real Estate, Loan & Building Company, on a written instrument of which the following is a copy:

"No. 214.　　　　　　　　　　　　　　　　　1 Share.

Preferred Stock, $100,000.　　　　Common Stock, $250,000.
　　　Shares $50 each.　　　　　　　　　Shares $100 each.

Savannah Real Estate, Loan and Building Company.

This is to certify that Isadore Silverberg is entitled to one share of the preferred stock of the Savannah Real Estate, Loan and Building Company, of the par value of fifty dollars per

share, the same being a part of an issue aggregating one hundred thousand dollars, which was created and established by the board of directors by a resolution passed on December 15th, 1892; and the holder thereof is entitled to receive a dividend of eight per cent. per annum from the first day of January, 1893, payable semi-annually on July 1st and January 1st, in each year, upon the full amount thereof, before any dividend whatever is payable on the common capital stock. This preferred stock is accumulative, but does not participate in any dividends or profits on the common capital stock over and above an eight per cent. dividend, and the same is not invested with power to vote at the meetings of the stockholders, but the holder thereof shall have the right to attend such meetings. The entire issue of this preferred stock shall be retired by the company on January 1st, 1897, at its face value, but the company reserves the right to retire the same or any part thereof at any time after two years from date, upon giving three months notice thereof in one of the Savannah newspapers. This preferred stock is transferable only on the books of the company by the stockholder in person or by attorney duly authorized, on surrender of this certificate. In witness whereof the said company has caused its corporate seal to be hereto affixed and this certificate to be signed by its President at Savannah, Georgia, this 19th day of April, 1897.

(Seal).   T. G. Reid,                    J. S. Collins,
          Treasurer.                       President."

The defendant filed a plea setting up, that the paper sued on is simply a certificate showing that the plaintiff is entitled to one share of an issue of two thousand shares of preferred stock in the defendant company, and that it is not permissible for one such shareholder by judgment or otherwise to obtain an advantage over other shareholders of the same class; that it was intended that the preferred stock should be retired on the 1st day of January, 1897, but at a meeting of such stockholders on the 12th of January, 1897, it was unanimously resolved that the officers of the defendant company carry on the business without attempting to retire the stock, and that plaintiff had notice of the time and place of this meeting; that it has

no authority to retire a single share of stock, nor can the holder of a single share force the company to retire the same; that the share of stock is not a money obligation, and has not matured in such a way as to enable the plaintiff to bring an action thereon; that the holders of the preferred stock have rights superior to the holders of the common stock but inferior to the claims of creditors, and at best are entitled only to a pro rata proportion of the assets; that plaintiff is the owner and holder of five shares of the preferred stock, which was originally represented by one certificate, but within sixty days before this suit was brought, for the purpose of annoying this defendant with a multiplicity of suits and in an effort to obtain an unconscionable advantage over his fellow shareholders, he had the officers of this defendant, who were unaware of his designs, to issue him scrip for each of the five shares, which being done the present suit was brought on one of the five shares thus issued; that the plaintiff's interest in the defendant company is, therefore, of the face value of $250, and can not be divided up into five parts for the purpose of conferring jurisdiction on the justice's court, and thus obtain for himself an advantage over other holders of stock of similar nature; and that plaintiff has no right to bring a suit on the certificate, his remedy being, if there is a default in the payment of the same, to institute proceedings in a tribunal of appropriate jurisdiction, where all creditors of every class may be protected, to wind up the affairs of the company.

At the trial the plaintiff introduced in evidence the certificate sued on, which is set out above. Also, the following resolution of the directors of the defendant: "Resolved further, that this company does hereby create and establish $100,000 of preferred stock of the par value of $50 per share, bearing and carrying an eight per cent. dividend from January 1st, 1893, payable semi-annually on July 1st and January 1st of each year. The said stock shall be accumulative and non-votable, and will not entitle the holder thereof to participate in any dividend or profits on the common stock over and above said eight per cent.; and said stock shall be issued subject to the right reserved by this company to redeem same at any time

after two years from January 1st, 1893, upon 3 months written notice, provided, if not redeemed by January 1st, 1897, the said stock shall become payable on that date.".

The following extracts from the charter of the defendant company were introduced in evidence in behalf of plaintiff: "Fourth: That the amount of capital to be employed by said corporation actually paid in will be the sum of one hundred and twenty-five thousand dollars ($125,000), divided into one thousand two hundred and fifty shares of one hundred dollars ($100) each. Fifth: In addition to the powers necessary for the carrying out of the purposes above set forth, petitioners ask that said company shall be empowered as follows: To issue common and preferred stock, to increase the said capital stock from time to time in the discretion of and through the board of directors of said company to any amount not exceeding in all the sum of five hundred thousand dollars ($500,000), divided into shares as aforesaid, and to decrease said capital stock from time to time similarly not below the sum of one hundred thousand dollars ($100,000), to receive real and personal property in payment for said capital stock, and subscribe for, purchase, receive, hold, and dispose of the stock, securities, and obligations of any other corporation now or hereafter to be formed under the laws of this or any other State or Territory, or of the United States; to lend or borrow money on note, bill, bond, pledge, deed, mortgage, or other obligation or lien, with or without real or personal security. Stockholders who have paid their stock subscriptions in full to be in no wise liable for the debts of the corporation nor for any wrongs committed by it."

J. S. Collins, president of the defendant company, introduced as a witness for plaintiff, testified, in substance, that the preferred stock issued by the company was issued to the subscribers, who paid cash for it, and that the money received from it was used by the company to pay for its lighting plant, machinery, etc.; that the company had made no effort to retire or pay off the preferred stock since January 1, 1897, on account of the action taken at the preferred stockholders' meeting on January 12, 1897; that the plaintiff was not present at this

meeting; that the defendant company was solvent, though unable to retire or pay off the outstanding preferred stock in money. Plaintiff also introduced in evidence the minutes of the meeting of preferred stockholders of January 12, 1897, the substance of which was as follows: The meeting was held pursuant to a notice which stated that it was desired to submit to the preferred stockholders, a statement of the present status of the company, and that it was deemed advisable that some steps should be taken for the more speedy expedition of the affairs of the company. When the meeting was called to order the secretary, upon request of the chairman, ascertained and reported that of the 808 shares of preferred stock now outstanding there were 470 shares present in person and by proxy. A member of the finance committee, being called on for his report, made a detailed showing of the company's condition, which showed that in the last two years the company had succeeded in reducing its indebtedness about $40,000. He stated that while the condition of the company as regards its creditors was favorable, yet there was no demand at present for real estate, that a half dozen lots had not been sold in the past two or three years. He stated further that until the creditors of the company were paid off there would be nothing coming to the preferred stockholders, and that any attempt to retire the stock at this time as was originally contemplated was manifestly impossible. After a general discussion of the situation, it was finally decided by unanimous vote that the company should not attempt to retire the preferred stock until after the debts of the company are paid off. It was admitted that the plaintiff had made a demand upon the defendant, before suit was brought, for the payment of the sum specified in the five certificates held by him, including the one sued on; and that written notice of the time and place of meeting of the preferred stockholders above referred to was mailed to him.

The justice rendered judgment in favor of the plaintiff for $50 and costs of suit. The defendant carried the case to the superior court by certiorari, where the judgment of the justice was affirmed, and the defendant excepted. It is contended by

the plaintiff in error, first, that Silverberg was merely a preferred stockholder in the defendant company, and that the certificate sued on was in no sense such an evidence of indebtedness as would authorize him to sue on the same and recover a judgment against the company as was done in this case; and, second, that even if he is not technically a preferred stockholder, the character of the obligation held by him was such that he constituted one of a class of persons holding obligations against the company, no member of which could lawfully obtain any preference over the others by a single suit and judgment.    To determine what was the character of the contract entered into between the plaintiff and the defendant when the original certificate purporting to represent five shares of preferred stock was issued to him, we must construe the certificate in the light of the resolution authorizing its issue, and also those provisions of the charter of the defendant company which define its powers in regard to such matters.    The company has authority under its charter to issue stock both common and preferred.    It also has authority to borrow money and to execute evidences of indebtedness.    The question to be determined in this case is: when the plaintiff paid to the officers of the defendant $250 in cash and they issued to him the original certificate of which the instrument sued on is a copy except as to amount, whether he thereby became a member of the corporation and acquired such rights and privileges as against outsiders that a member would have, and greater privileges than some other members, or whether he never became a member of the company but simply loaned to it his money, and the certificate represented the obligation to repay him his loan according to the terms and conditions of the instrument.    The resolution authorizing the certificates to issue, and the certificates themselves, containing words which would be peculiarly appropriate both to a certificate of stock and to an evidence of indebtedness, renders the determination of this case peculiarly difficult.    In its general appearance the paper sued on would seem to be a certificate of stock.  An analysis of its terms, however, shows that the holder is deprived of one of the important rights of a stockholder in a corporation, that is, the right to vote.    The mere deprivation

of this right, however, would not prevent the holder from being a member of the corporation. If all the other terms of the certificate were such as would be consistent with membership in the corporation, the deprivation of the right to vote would not prevent the holder from being a member. 2 Thomp. Cor. § 2281. It seems to be clear from the certificate, though not in express terms so stated, that what is therein called the dividend of eight per cent. is not to be paid absolutely and at all events but simply in the event the corporation earns a sufficient amount to pay to each holder of such certificate that amount. This stipulation rather indicates that the holder would be a member of the company. The use of the word "dividend" and the language of the certificate dealing with what it calls a dividend is language peculiarly appropriate to a certificate of stock. It is declared that "this preferred stock is accumulative, but does not participate in any dividends or profits on the common capital stock over and above said eight per cent. dividend." While the holder is deprived of the right to vote, he is given the right to attend all the meetings of the stockholders. On the other hand, it is distinctly provided that the amount specified in the certificate shall be paid on a given date, and the right is reserved to pay the same, upon notice to the holder, upon a day earlier than the day fixed in the certificate. The stipulation that the entire issue shall be "retired" on January 1st, 1897, and that the company may "retire the same or any part thereof at any time after two years from date," upon giving notice of the character therein provided for, are stipulations indicating an intention to make a contract under which one party was to receive the money for use in its business and return the same in any event at a designated time and earlier if desired, paying to the person whose money was thus used as interest thereon a certain proportion of the earnings made by the borrower in a given enterprise; the amount of interest thus to be paid for the loan of the money depending upon the success of the enterprise in which the borrower was to use the money. Dealing with the certificate in the light of the circumstances under which the money was advanced to the corporation, and in the light of the resolution authorizing its issue, we are forced to

the conclusion that the obligation entered into by the company was of the character above referred to, notwithstanding the fact that there appears in the certificate and resolution language which is apparently inconsistent with this view.    While the right to vote, as has been stated, is not absolutely necessary to constitute a person a member of a corporation, the withholding of this right, taken in connection with the other circumstances in the present case, leads us to the conclusion that it was the intention of the parties, when the resolution was passed authorizing what was called the issue of preferred stock, to negotiate a loan for the benefit of the company, and that the certificates issued were simply evidences of debt, the amount of the debt due each holder being the amount stated therein and the interest to be paid up to the time of maturity, the latter depending upon the earnings of the company and in no event to exceed eight per cent. on the face value of the certificate; it being possible to infer from the terms of the certificate that if the net earnings were not sufficient to pay eight per cent., then they were to be divided pro rata among the holders of the certificates.

The question as to whether the holder of a certificate issued by a corporation is a member of such corporation, or whether the certificate is simply evidence of a debt due by the corporation to the holder, is one that depends upon the peculiar facts of each case; and if such certificate makes the holder a preferred stockholder in the corporation, the question as to what are his rights against other stockholders depends also upon the facts of each case.    Therefore the decisions relating to these questions are only helpful in so far as they lay down general principles to guide in the determination of any case that may be for consideration.    We have found no decision in which the facts were so nearly the same as those in the present case as to be cited as controlling authority, but the following authorities and decisions will be found to recognize the principles which we have endeavored to apply in the present case: 2 Thomp. Cor. §§2277–8, 2282; 1 Cook, Cor. §271; 23 Am. & Eng. Enc. L. 602 et seq.; Boardman *v.* Railway Company, 84 N. Y. 157; Railroad Company *v.* Jackson, 77 Pa. St. 321; Bates *v.* Railroad Company, 49 Me. 491; Davis *v.* Proprietors, 8 Met. (Mass.)

321; Railroad Company v. Thrall, 35 Vt. 536, 546; Jones v. Railroad Company, 32 N. H. 544; Burt v. Rattle, 31 Ohio St. 116; Taft v. Railroad Company, 8 R. I. 310, s. c. 5 Am. Rep. 575; Nickals v. Railroad Company, 13 Am. & Eng. R. R. Cas. 139; Chaffee v. Railroad Company, 16 Am. & Eng. R. R. Cas. 408; Heller v. Marine Bank, 43 Atl. 800; Field v. Lamson, 27 L. R. A. 136, and notes.    In the case of Totten v. Tison, 54 Ga. 139, the general rule was stated to be, that the holders of preferred stock have a right to receive dividends from the earnings of the company before the common stock can share in such earnings, and therefore that priorities might attach to this stock as between the stockholders themselves, but that neither class of stockholders could, as such, claim a lien as against creditors; but, under the peculiar facts of that case, persons who had formerly been merely preferred stockholders but had surrendered such stock and had issued to them mortgage bonds of the company were held to be creditors of the company. Whether they would have been creditors before the surrender of their stock and the reception by them of the mortgage bonds was a question which the court held was unnecessary to be decided.    That case, like those above cited from other jurisdictions, was decided upon its peculiar facts.    In the case of Cook v. B. & L. Ass'n, 104 Ga. 814, 828, it was held that what purported in that case to be a certificate of stock in a building and loan association was really an evidence of indebtedness. Mr. Justice Lewis in the opinion says: "It matters not what name is given to its obligation, whether stock, note, or bond; the nature of the transaction, whether it be a pure borrowing of money or not, is determined by the real substance and effect of the contract between the parties."    Looking at the substance of the contract now under investigation, our final conclusion is that the relation of lender and borrower arose between the parties, and that the paper issued at the time the money was advanced, although in its form it appears to be a certificate of stock, is in fact and in substance simply an evidence of indebtedness, which the holder has a right to enforce against the person executing it.    If this view of the case is correct, the surrender of the certificate for $250 and the issue

by the defendant of the five separate certificates was lawful; and the justice's court had jurisdiction of a suit upon any one of them. Civil Code, §§4069, 4110. Although the original certificate was past due when it was surrendered, the new certificates were in exactly the same language, and when issued and delivered became past due evidences of debt upon which suit might be brought. The plaintiff, as to the amount stated in the face of the certificate sued on, stands upon the same footing as any person who had loaned another the amount stated and had received a written obligation to repay the same, and the fact that others loaned similar or larger amounts at the same time and received similar evidences of debt would not constitute the lenders a class which would be bound to enforce their rights as such. Any one of the individuals so advancing the money would have a right to demand payment thereof at the time that the obligation matured, and, upon refusal to pay, to bring suit, without regard to the conduct of the other persons who had also advanced money at the same time. As the plaintiff obtained judgment against the defendant for the face value of the certificate, and no amount seems to have been claimed as interest, the question as to what would be the rights of a holder of a certificate of this character in regard to interest on the obligation is not determined in the present case.

*Judgment affirmed. All the Justices concurring.*