In re FIFTY GOLD MINES CORPORATION.

(District Court, D. Colorado. October 10, 1911.)

No. 1,916.

CORPORATIONS (§ 170*)—STOCKHOLDERS—CREDITORS.

Preferred stock certificates guaranteed to the holders 10 per cent. per annum if the net profits permitted; reserved to the corporation the right to redeem the certificates after January 1, 1911, at a fixed amount per share; bound the corporation to redeem all the outstanding certificates on or before January 1, 1916; and authorized the holders, on failure to pay dividends to which they were entitled for 90 days, to foreclose a mortgage securing such preferred stock, and provided for a first mortgage lien on all the corporation's property as security therefor, in which the holders of the certificates were entitled to participate ratably. Such stockholders were not entitled to participate in the management of the corporation nor in its profits above 10 per cent. per annum, nor in the assets on distribution above $11 per share. *Held*, that such stockholders were creditors of the corporation and not stockholders, and hence a mortgage given to secure such stock was not fraudulent.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 624–632; Dec. Dig. § 170.*]

In the matter of bankruptcy proceedings of the Fifty Gold Mines Corporation. On certificate of the referee to review an order canceling a deed of trust securing preferred stock. Reversed.

J. E. Robinson and J. L. Bennett, for trustee.
Henry C. Hall, for Corporation Trust Co.
Kelley & Haines, for preferred certificate holders.

LEWIS, District Judge. The bankrupt was incorporated under the laws of this state in November, 1905, and on January 3d, 1906, its board of seven directors first met and organized, after each director had subscribed and paid for one share of the common stock of the company.

The articles of incorporation provided:

"The capital stock of our said corporation is three million (3,000,000.) dollars, to be divided into three hundred thousand shares of ten (10) dollars for each share and said stock shall be non-assessable. One hundred thousand shares being preferred stock and two hundred thousand shares being common stock."

At the time the corporation was organized one O. B. Thompson was the owner of a large number of mining claims situate in Gilpin Coun-

.ty; some of these claims had been worked for a great many years and had produced much valuable ore. The referee certifies that the undisputed testimony taken before him placed their value, at the time the corporation was organized, at three million dollars. Mr. Thompson made a proposition in writing to the board of directors at their first meeting, and to the stockholders of the company at a meeting held by them on the same day, by which he offered to convey all of his said mining property to the corporation in consideration of the company issuing to him therefor the said one hundred thousand shares of preferred stock and the two hundred thousand shares of common stock less the seven shares thereof that had been taken and paid for by the directors. His written offer further provided that the corporation should execute a first mortgage lien upon the said property to be conveyed by him to it to secure the said preferred stock, the terms of his offer in that regard being, as reported by the Referee:

"That it is executed for the sole and exclusive purpose of guaranteeing to the holders of the preferred stock of said corporation that all and each of the provisions contained therein will be fully and promptly complied with on the part of said corporation."

Thompson's offer also bound him to place the preferred stock in the hands of a trustee for sale, and when sold a fixed percentage of the proceeds obtained for said preferred stock was to be paid over to the treasurer of the corporation. The stockholders at their meeting (being the seven directors) and the seven directors, as such, both accepted Thompson's proposition. Thompson thereupon conveyed the property to the corporation and the corporation on February 20th, 1906, executed and delivered its deed of trust to the Empire Trust Company of New York securing to the present and future holders of said preferred stock the performance, on the part of the corporation, of the conditions contained in the certificates issued, and to be issued, for said preferred shares. This deed of trust was filed for record under the Colorado recording Acts on Feb. 25th, 1906. Thompson thereupon, in compliance with his offer, placed the preferred shares in the hands of agents in New York City for sale, and sales were made to the extent of sixty-five thousand dollars ($65,000), one-fourth of which went to said agents for commissions, one-fourth to the corporation and one-half to Thompson. No further sales of preferred stock were ever made. The common stock was afterwards increased to ten million dollars ($10,000,000) and Thompson surrendered to the company all of the remainder of said preferred shares, which were taken up and canceled and presumptively common stock issued instead. The certificates of preferred stock gave the holder the right to surrender them and take in lieu thereof an equal amount of shares in common stock, and at the time of adjudication more than half of the preferred shares that had been sold by New York agents had been surrendered to the company and canceled, so that there was at adjudication, and is now, outstanding of the one million dollars of preferred stock only thirty-one or thirty-two thousand dollars thereof. The corporation never realized profits out of which dividends could be paid.

Certificates for preferred shares were in the following form:

Incorporated under the Laws of the State of Colorado.

No. ———                                          ——— Shares.

THE FIFTY GOLD MINES CORPORATION.

Capital Stock $3,000,000.00.

Shares $10.00 each.

Preferred Stock                                    Common Stock

$1,000,000.00                                   $2,000,000.00

This is to certify that ——— is the owner of ——— Shares of the Preferred Capital Stock of The Fifty Gold Mines Corporation, fully paid and non-assessable and transferable only by entry on the books of the Corporation, upon surrender of this certificate properly endorsed.

The Preferred Stock is entitled to CUMULATIVE dividends of ten (10) per cent. per annum, payable quarterly, commencing April 1st, 1906, from the net profits of the corporation before any dividends are paid on the common stock, and the COMMON stock is entitled to all dividends in excess of said ten (10) per cent. In the event of the dissolution of the Corporation or a distribution of its assets, the Preferred Stock outstanding at that time shall first be paid at Eleven Dollars ($11.00) per share, plus all accumulated unpaid dividends, and the remainder of the corporate assets shall be divided ratably among the holders of the Common Stock.

The owner of unredeemed preferred stock, may, at his option, exchange the same at any time for common stock of the corporation, share for share. The voting power at any stockholders' meeting is confined exclusively to owners of Common Stock.

THE FIFTY GOLD MINES CORPORATION reserves the right to redeem any number or all of its certificates of Preferred Stock, at Eleven Dollars ($11.00) per share, plus all accumulated unpaid dividends, at any time after January 1st, A. D. 1911, and to determine by lot which certificates shall first be redeemed, and said corporation expressly agrees to redeem all its preferred stock on or before January 1st, A. D. 1916. A failure of said corporation for a period of ninety days to pay any quarterly dividend hereon, after the same becomes due and payable, shall render the corporation in default as to such payment, and thereby entitle the owner of this certificate to a foreclosure of the Mortgage securing the same.

As a guarantee that THE FIFTY GOLD MINES CORPORATION will promptly pay all dividends upon its preferred stock and redeem the same in strict accordance with the provisions of this Certificate, said corporation has made, executed and delivered to The Empire Trust Company of New York City, as Trustee, a FIRST MORTGAGE LIEN UPON ALL ITS PROPERTY in the amount of $1,000,000.00, in which security all owners of preferred stock participate ratably.

This certificate is not valid until countersigned by The Empire Trust Company of New York City, N. Y.

Witness the seal of the Corporation and the signature of its duly authorized officer this ——— day of ———, A. D. 19—.

COUNTERSIGNED AND REGISTERED

The Empire Trust Company

  By ———————.

                      THE FIFTY GOLD MINES CORPORATION,

                           By Thomas Fielding, President,

                           and J. L. Fielding, Treasurer.

Thereafter, and in November 1908, the corporation issued its negotiable bonds to the extent of four hundred and fifty thousand dollars ($450,000), and to secure payment of the same gave its deed of trust to the Corporation Trust Company of New Jersey, as Trustee. In this deed of trust it is represented that the preferred shares then outstanding, secured by the deed of trust to The Empire Trust Compa-

ny, did not exceed the principal sum of sixty-two thousand dollars ($62,000), and it was also noted that The Empire Trust Company, as trustee under said first deed of trust, had certain rights, under the instrument executed to it, with reference to fire policies to be issued on the property of the corporation as other security to the holders of said outstanding preferred shares.

After adjudication Fermor J. Spencer, the trustee in bankruptcy, took possession of the mining properties and he thereupon filed a petition before the Referee asking that the deed of trust given to The Empire Trust Company to secure the outstanding preferred shares be declared null and void. The Corporation Trust Company, trustee under the second deed of trust, also filed its petition asking the same relief. Service of all parties in interest was made by publication, under order of the Referee, on the said petition of the trustee in bankruptcy. When the matter came on for hearing six holders of preferred certificates, amounting in all to nine hundred shares, appeared by counsel and resisted the orders sought by the two petitions. The relief sought by the trustee in bankruptcy and The Corporation Trust Company was granted, the deed of trust to The Empire Trust Company was declared null and void and an order entered that the holders of said preferred shares were not entitled to assert, or have allowed, any claims against the bankrupt under their certificates as against creditors, either secured or unsecured; and on petition of the holders of the said nine hundred preferred shares who resisted said order the Referee has certified the controversy.

Oral arguments were made at length and exhaustive briefs have been filed.

There is only one inquiry involved in the controversy, and that is: *Do the preferred certificates constitute the holders thereof stockholders in the corporation, or are they, under the terms of the certificates, made creditors of the corporation?*

An examination of the certificate issued for preferred shares, so-called, discloses; (1) that the holder thereof was not entitled to participate in the management of the corporation's affairs, (2) nor in the profits thereof, above a limit of ten per cent. per annum, (3) nor in the assets thereof on distribution, above eleven dollars per share. These privileges, denied to the holders of these certificates, are the usual ones belonging to a stockholder. But, on the contrary, these certificates (1) guaranteed to the holders thereof, if net profits permitted it, ten per cent. per annum, (2) reserved to the corporation the absolute right to redeem said certificates after January 1st, 1911, at a fixed amount per share, (3) bound the corporation to redeem all of said outstanding certificates on or before January 1st, 1916, (4) authorized certificate holders, on failure to pay the dividends to which they were entitled thereunder for ninety days after such dividends became due, to foreclose the mortgage securing them, and (5) provided for a first mortgage lien upon all of the corporation's property as security in which the holders of said certificates should participate ratably. These are indubitable evidences of an intention to create a debt and constitute the holder thereof a creditor of the corporation.

It is insisted that the officers of the corporation, in attempting to comply with state statutes, certified that the capital stock of the corporation was three million dollars ($3,000,000), divided into three hundred thousand shares of the par value of ten dollars ($10) each; but their acts could not change the contractual relation of the corporation to the holders of these certificates without the consent of the holders. It is further said that the articles of incorporation denominated the one hundred thousand shares as being preferred stock, and that the certificates themselves purport to represent stock. It is aptly said in some of the authorities cited below on a like inquiry:

"To call a thing by a wrong name does not change its nature. * * * The question in such cases is not what did the parties call it? But what do the facts and circumstances require the court to call it?"

In my opinion the holders of preferred certificates are creditors and not stockholders, and they are entitled to have their claims allowed as preferred claims against the bankrupt. Heller v. Bank, 89 Md. 602, 43 Atl. 800, 45 L. R. A. 438, 73 Am. St. Rep. 212, and cases therein cited; Savannah v. Silverberg, 108 Ga. 281, 33 S. E. 908; Mulford v. Torrey Exploration Co., 45 Colo. 81, 100 Pac. 596.

The findings and order of the Referee are therefore overruled. He will take further action in keeping with these conclusions.