30293. DEPARTMENT OF REVENUE *v.* KING BROTHERS MOTOR CO. INC.

DECIDED MARCH 9, 1944.

747

748

*T. Grady Head, attorney-general, Claude Shaw, assistant attorney-general,* for plaintiff.

*Wilson, Bennett, Pedrick & Bennett,* for defendant.

GARDNER, J. 1. We have set forth the facts applicable to the case somewhat in detail in order to better illustrate the question for determination. It is conceded by both parties that if the $10,-200 is interest, under the law there are no taxes due. While on the other hand, if under the agreed statement of facts that sum is stock dividend, the taxes are due. At the outset it will be recognized that (a) the charter for incorporation was usual and legal; that (b) if there was anything illegal in the acquisition by the corporation of the assets of the partnership, such is not pointed out; that (c) the notes executed by the corporation to the two members of the corporation to purchase the assets of the partnership were executed in conformity with our law; that (d) the bill of sale (or security deed) executed by the corporation to the individual members of the partnership to secure the payment of the purchase-price of the stock in trade was the customary and lawful method used daily in commercial barter and trade for transactions similar to the transaction in question; that (e) the fact that as a part of the consideration for the transfer of the assets of the partnership to the corporation, a part payment for such assets was to be in stocks of the corporation is also a common practice and not unusual; but (f) it is contended by the State Department of Revenue that since the partners acquired from the corporation all of its stock as a part consideration for the assets, and became the officers and controlling force in the corporation, to limit the interest on the debt to six per cent., provided the corporation earned that

much, and to forego interest to the extent of less than six per cent. on the remaining amount, established the transaction as one of dividend and not one of interest on indebtedness.

This brings us to the consideration whether the transaction resulted in one of dividend on stock rather than interest on indebtedness. It is noted that no incident in the organization is challenged for fraud. All of the transactions as between the partnership and the corporation were open and legal. Nothing was concealed, no challenge of value raised. We are not without precedent of cases based on facts of similar import to the situation here involved to the effect that the $10,200 is to be considered interest on indebtedness rather than dividend on shares of stock. We are of the opinion that the decision of the Supreme Court in *Savannah Real Estate, Loan & Building Co.* v. *Silverberg,* 108 *Ga.* 281, 287 (33 S. E. 908), is based upon facts sufficiently similar to the instant case to be controlling. That decision has been the basis of discussion in several decisions since that time. See *Jefferson Banking Co.* v. *Trustees of Martin Institute,* 146 *Ga.* 383 (91 S. E. 463); *Equitable Building & Loan Association* v. *Brady,* 171 *Ga.* 576 (156 S. E. 222); *O'Neal* v. *Automobile Piston & Parts Co.,* 188 *Ga.* 380, 385 (4 S. E. 2d, 40). While the decisions since the *Silverberg* case do not deal with facts so similar to those in the instant case, they do discuss the question before us, and serve to crystallize and reaffirm the soundness of the question discussed in the *Silverberg* case. In that case the court said: "It seems to be clear from the certificate, though not in express terms so stated, that what is therein called the dividend of eight per cent. is not to be paid absolutely and at all events but simply in the event the corporation earns a sufficient amount to pay to each holder of such certificate that amount. This stipulation rather indicates that the holder would be a member of the company. The use of the word 'dividend' and the language of the certificate dealing with what it calls a dividend is language peculiarly appropriate to a certificate of stock. It is declared that 'this preferred stock is accumulative, but does not participate in any dividends or profits on the common capital stock over and above said eight per cent. dividend.' While the holder is deprived of the right to vote, he is given the right to attend all the meetings of the stockholders. On the other hand, it is distinctly provided that the amount specified in the certificate shall

be paid on a given date, and the right is reserved to pay the same, upon notice to the holder, upon a day earlier than the day fixed in the certificate. The stipulation that the entire issue shall be 'retired' on January 1st, 1897, and that the company may 'retire the same or any part thereof at any time after two years from date,' upon giving notice of the character therein provided for, are stipulations indicating an intention to make a contract under which one party was to receive the money for use in its business and return the same in any event at a designated time and earlier if desired, paying to the person whose money was thus used as interest thereon a certain proportion of the earnings made by the borrower in a given enterprise, the amount of the interest thus to be paid for the loan of the money depending upon the success of the enterprise in which the borrower was to use the money. . . Looking at the substance of the contract now under investigation, our final conclusion is that the relation of lender and borrower arose between the parties; and that the paper issued at the time the money was advanced, although in its form it appears to be a certificate of stock, is in fact and in substance simply an evidence of indebtedness, which the holder has a right to enforce against the person executing it." It is contended by the Department of Revenue that since the indebtedness is due to the controlling stockholders, it is conclusive that the so-called interest was in fact stock dividends. With this view we are unable to agree. Our State income-tax law is similar to the Federal income-tax law. While we are not bound in this State by the construction of the statute which the Federal government might place upon it, we might adopt it with a feeling of confidence. In Commissioner of Internal Revenue v. T. R. Miller Mill Company, 102 Fed. (2d) 599, a similar question arose under the following facts: The corporation declared a $500,000-surplus dividend to its stockholders. At the same time the corporation was authorized to borrow $500,000 from the stockholders or trustees representing stockholders. The stockholders authorized the trustees to lend this $500,000 to the corporation for one year, by taking a note from the corporation due in one year at six per cent. interest per annum. The principal was not paid at maturity, but each year the stockholders did receive, according to their pro rata shares of stock held in the corporation, their pro rata share of the $30,000 interest on the note. This ar-

rangement continued from 1927 to the years 1932 and 1933. It was contended by the Commissioner of Internal Revenue that the arrangement between the corporation and its stockholders constituted a relationship of that of stockholder of the corporation, and not that of debtor and creditor, and disallowed the $30,000 deducted as interest. The Board of Tax Appeals found against the commissioner. The commissioner then appealed to the Circuit Court of Appeals of the fifth circuit, which held: "The question presented is whether the $30,000 paid by the taxpayer to the stockholders' trustees represented interest paid on indebtedness. The statute involved provides, among other things, that in computing net income there should be allowed as deductions 'All interest paid or accrued within the taxable year on indebtedness, . .' Revenue Act of 1932, c. 209, 47 Stat. 169, 179, § 23 (b), 26 U. S. C. A., § 23, note. [1] There is no comprehensive rule by which the question of deductibility may be decided in all cases. Whether the payments involved represent interest on indebtedness depends upon the relationship of the parties. The fundamental consideration is whether the arrangement under which the taxpayer paid $30,000 each year to the trustees gave rise to the relationship of debtor and creditor. Commissioner of Internal Revenue v. Proctor Shop Inc., 9 Cir., 82 Fed. 2d, 792. [2] The note given by the corporation to the stockholders' trustees on its face represents an unconditional promise to pay $500,000 and interest. The mere fact that the note was not paid when due does not change the character of the obligation. The company had legally declared a dividend. The stockholders authorized their trustees to receive the dividend. The $500,000 note given to the trustees in payment of the dividend was binding on the company and created the relationship of debtor and creditor. We are of the opinion that the payments of $30,000 were clearly payments of interest on an indebtedness, and therefore deductible under the provisions of Sec. 23 (b), Revenue Act of 1932. The petition is denied and the judgment of the board is affirmed." Considering the contention in the instant case that the six per cent. interest was to be paid from net profits, it is our opinion that this arrangement did not destroy the relationship of debtor and creditor. We find in the case of Commissioner of Internal Revenue v. O. P. P. Holding Corporation, 76 Fed. (2d) 11, involving debenture bonds the commissioner strictly construed the instruments in-

volved there as certificates of preferred stock and not as evidences of indebtedness. The court held: "We do not think it fatal to the debenture-holder's status as a creditor that his claim is subordinated to those of general creditors. The fact that ultimately he must be paid a definite sum at a fixed time marks his relationship to the corporation as that of creditor rather than shareholder. The final criterion between creditor and shareholder we believe to be the contingency of payment. The shareholder is entitled to nothing, prior to liquidation, except out of earnings. Even on liquidation, at least in New York, arrears of cumulative dividends are confined to earnings. . . The petitioner urges that the name given to an instrument is not controlling, but that its inherent characteristics will determine its true nature and legal effect. This may be conceded, but it does not follow that the name by which the certificates are designated is to be completely ignored. Stocks and bonds both evidence a contract between their holders and the issuing corporation, and, in construing this contract, the language used in reducing it to writing will be indicative of the intention of the parties."

In this connection we would like to call attention to a case from the Supreme Court of the United States. In Old Colony Railroad Co. v. Commissioner of Internal Revenue, 284 U. S. 552, 563 (52 Sup. Ct. 211, 76 L. ed. 484), that court held: "And as respects 'interest,' the usual import of the term is the amount which one has contracted to pay for the use of borrowed money. He who pays and he who received payment of the stipulated amount conceives that the whole is interest. In the ordinary affairs of life no one stops for refined analysis of the nature of a premium, or considers that the periodic payment universally called 'interest' is in part something wholly distinct, that is, a return of borrowed capital. It has remained for the theory of accounting to point out this refinement. We cannot believe that Congress used the word having in mind any concept other than the usual, ordinary, and everyday meaning of the term, or that it was acquainted with the accountants' phrase 'effective rate' of interest and intended that as the measure of the permitted deduction. . . In short, we think that in the common understanding 'interest' means what is usually called interest by those who pay and those who receive the amount so denominated in bond and coupon, and that the words

of the statute permit the deduction of that sum, and do not refer to some esoteric concept derived from subtle and theoretic analysis. If there were doubt as to the connotation of the term, and another meaning might be adopted, the fact of its use in a tax statute would incline the scale to the construction most favorable to the taxpayer." If it might be conceded (and there is nothing whatever to indicate that such is the purpose) that the transition of the business in the instant case was to put it in a class less expensive in so far as taxes were concerned, we still do not think we could look to this as a reason to conclude that the relation of debtor and creditor should be ignored even though it legally existed. Would it not be reasonably expected that one operating his business in a certain channel would change into a different channel if he could legitimately do so in the manner and form others were operating, if it would be more profitable to do so? We think this course is practiced and is permissible. Too, this idea is not new, and is based on authority. We refer to Chrisholm v. Commissioner of Internal Revenue, 79 Fed. 2d, 14, in which we find the following: "A man's motive to avoid taxation will not establish his liability if the transaction does not do so without it. . . The question always is whether the transaction under scrutiny is in fact what it appears to be in form; a marriage may be a joke; a contract may be intended only to deceive others; an agreement may have a collateral defeasance. In such cases the transaction as a whole is different from its appearance. True, it is always the intent that controls; and we need not for this occasion press the difference between intent and purpose. We may assume that purpose may be the touchstone, but the purpose which counts is one which defeats or contradicts the apparent transaction, not the purpose to escape taxation which the apparent, but not the whole, transaction would realize." See also Jones v. Page, 102 Fed. (2d) 144.

2. The Department of Revenue cites many cases defining "dividend" and "interest" to sustain its position to the effect that the transaction before us is one which should be construed as that of shareholder and not of creditor. Among these cases will be found *Coggeshall* v. *Georgia Land & Investment Co.,* 14 Ga. App. 637, 639 (82 S. E. 156); *Jefferson Banking Co.* v. *Trustees of Martin Institute,* supra; Untermyer v. Commissioner of Internal Revenue, 59 Fed. (2d) 1004; Waggaman v. Helvering, 78 Fed. (2d) 721;

754

Pennington *v.* Commonwealth Hotel Construction Co., 17 Del. Ch. 394 (155 Atl. 514) ; *Harris* v. *Allen,* 18 *Ga.* 177; and many others, some of which are not apparently in complete harmony with what we hold. But in view of the reasoning of our own appellate courts, particularly in the *Silverberg* case, supra, we feel that we have advanced the better view; that the relationship, under the facts of the instant case, is that of debtor and creditor and the $10,200 is deductible as expenses and not subject to taxation as a dividend payment.

It is contended by the Department of Revenue that the case of *Stale Revenue Commission* v. *Glynn,* 61 *Ga. App.* 567 (6 S. E. 2d, 384), is controlling. The ruling in that case is based on subsection (d) of the Code, § 92-3109. This subsection deals with losses. The facts in the *Glynn* case are to the effect that upon the dissolution of a corporation a stockholder will not be permitted to deduct his losses under subsection (d), supra. The questions there and here are dissimilar.

The court did not err in finding that ·the relationship was that of debtor and creditor.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*