## FEINGOLD v. McDONALD MORTGAGE & REALTY CO.

1. "An entirely different contract from that evidenced by a writing can not be pleaded or proved by parol as a substitute for that embodied in such writing."
2. A false statement is not fraudulent when there is no reason why the statement should be believed or acted upon.
3. Where a purchaser of land, not laboring under the stress of any emergency and with full opportunity to read a deed to a lot being purchased by him, in which the only description of the land is by the lot number in a certain numbered block in a subdivision of a named city, a plat of which is of record and so referred to in the deed, nevertheless accepts such deed and executes five notes payable annually to complete the purchase-price, without inquiry as to whether the deed about to be accepted by him refers to the lot which he thought he was purchasing, and retains this deed without inquiry for more than two years before an offer to rescind, parol evidence is. inadmissible to show that the lot described in the deed accepted by him was not the one purchased by him, so as to entitle him to seek a rescission of the contract. A petition which relied upon such a state of facts, without more, as evidencing fraud in avoidance of the deed, was properly dismissed upon demurrer.

No. 6290. AUGUST 21, 1928. REHEARING DENIED SEPTEMBER 26, 1928.

Equitable petition. Before Judge Custer. Dougherty superior court. October 5, 1927.

*W. H. Burt,* for plaintiff. *Bennet & Peacock,* for defendant.

RUSSELL, C. J. According to the allegations of the petition, P. Feingold received from the defendant a deed to lot 9 in block 8 of Biltmore Park, a subdivision of Lakeland, Florida, according to plat of said subdivision recorded in plat book 8, page 41, of the record of Polk County, Florida, which purported to evidence a transaction by which the petitioner purchased the lot described as above. The petitioner alleged that in the negotiations which resulted in his purchasing the property he was shown, and agreed to purchase, a different lot from that described in his deed; and he was shown by one Yetter, an agent of the defendant, the lot in the Biltmore Park subdivision which was adjacent to a large two-story residence building costing at least $25,000. The lot which was the subject-matter of their conversation and discussion was the vacant lot next to this stucco dwelling, but the petitioner, a stranger in Lakeland, is unable to give the exact location and direction, the vacant lot not being numbered or having any lines or stakes to evidence its size or identity. Yetter represented that this lot had a frontage of 105 feet and extended back the same width

a distance of —— feet; that it was the only unsold lot in the Biltmore Park subdivision; that it had a market value of at least $5000; that the lot adjoining on which the two-story dwelling was erected had sold for $7000; that in view of the fact that this was the only remaining lot the company would sell it for $3300, and if petitioner would purchase it Yetter would sell it for him in less than six months for $5000. Petitioner was unfamiliar with all of these elements. He purchased the particular vacant lot adjoining said two-story residence; and but for these representations falsely and fraudulently made with the intention and design to induce him to purchase, he would not have made the purchase. The statements made by the agent were knowingly false, but petitioner had no means of investigating to determine their falsity, and explained to Yetter that he would not buy the lot except on such representations; Yetter again assuring him that these were true, and petitioner could make no mistake but would make a nice profit if he made the purchase. Petitioner paid approximately $800 cash, received a deed to lot number 9 in block 8 of the Biltmore Park subdivision, and executed back to the defendant five purchase-money notes in the sum of $495 each, payable one, two, three, four, and five years after date. By amendment to the petition copy of the deed was attached, from which it appears that it was executed and delivered on June 12, 1925. The first note became due June 12, 1926, and petitioner paid the interest on it and secured an extension. On August 23, 1927, the McDonald Mortgage and Realty Company filed suit in the city court of Albany on the two notes payable June 12, 1926, and June 12, 1927. The present petition is brought to restrain the proceeding of the suit in the city court of Albany, to rescind the contract of sale and purchase, and to restore the parties to their former rights; petitioner alleging that he stands ready to return to the McDonald Company the deed to lot number 9 in block 8, as he offered to do on August 11, 1927, which offer was refused by the defendant on August 18, 1927.

The defendant demurred generally and specially upon several grounds, and the plaintiff amended in certain respects, especially by attaching a plat of the block in the Biltmore Park subdivision containing lot number 9 as above described in the deed accepted by the petitioner, from which it appears that the map of this subdivision was recorded in plat book 8, page 41, of the public records

of Polk County, Florida, June 26, 1925. Upon an interlocutory hearing the judge sustained the demurrers and dismissed the petition, and exception was taken to that judgment.

1. We are of the opinion that the court correctly dismissed the petition. It is not necessary to refer to all of the reasons which may have influenced the lower court; for reference to one or two principles which are apparent from a reading of the petition suffices to show that the court did not err. Whatever may be the decisions in other jurisdictions, it is well settled in Georgia that equity will grant no relief in favor of one who buys land, when he fails to exercise any diligence for his protection, and asserts that he blindly relied on the representations of the seller as to matters of which he could have informed himself. "A false statement is not fraud when there is no reason why the statement should be believed and acted upon." Buyers of land are sometimes excused from the effect of a writing when it is signed under stress of an emergency; but there is not a statement in the petition in the instant case to suggest any pressing need for haste, except the plaintiff's anxiety to grasp what he believed to be a great opportunity to make money which might be snatched from him if he delayed only long enough to investigate and ascertain the truth with reference to the transaction. So it can not be said that the purchase originated in fraud so much as in the carelessness of the purchaser to exercise ordinary care for his own interest. The effort of the purchaser is to substitute parol evidence as to the purchase of the lot next to the $25,000 stucco house for the writing or deed which he accepted as the conclusion of the negotiations, and by which he in fact purchased an entirely different lot in a different block. "An entirely different contract from that evidenced by a writing can not be pleaded or proved by parol as a substitute for that embodied in such writing." *Branan* v. *Warfield, 3 Ga. App.* 586 (60 S. E. 325). As said by Mr. Chief Justice Warner in *Bostwick* v. *Duncan, 60 Ga.* 383, 387, "If the defendant chose to believe that person, whoever he was, as to what the note contained, without reading it, he has no one to blame but himself, if in fact that person did make any representations as to the contents of the note at the time he presented it to the defendant for his signature. It is not the duty or business of the courts to relieve parties from their gross negligence in making their contracts. Besides, in these days of hard

swearing, when every man is a competent witness to swear for him-
·self in his own case, the rule that parol evidence is not admissible
to vary or contradict written contracts should not be relaxed."
Well-nigh innumerable Georgia decisions might be cited to the
same effect. There is no difference between the rule regarding the
binding force of the recitals of the deed accepted by the petitioner
in this case (and by him held without complaint for more than
two years) and the rule which would apply had the petitioner him-
self executed that instrument.

As said by Judge McCay in *Cheney* v. *Rodgers,* 54 *Ga.* 168, 170,
"It is a well-settled rule that a party is charged with notice of
recitals in any deed under which he claims title: Jumel *v.* Jumel,
7 Paige R., 591; Harris *v.* Fly, 7 Paige, 421; Moore *v.* Bennet, 2
Chan. Cas., 246; Walker's Chancery R. (Michigan) 463." Judge
Bleckley in *Rosser* v. *Cheney,* 61 *Ga.* 468, 470, said: "The first
purchaser and those claiming under him stand charged in law with
notice of the recitals in the deed from Russell to Cheney and wife.
That deed forms a link in the chain of their title, and this court
has held that its recitals affect them, whether they have examined
it or not. They might and ought to have examined it, and are in
the same situation as if they had examined it. Notice is not
synonymous with knowledge, but has a much broader signification.
If a person either knows a thing or is legally bound to inform him-
self of it, he has notice. The law is not indulgent to ignorance
where diligence has been omitted." So we have a case where the
petitioner seeks rescission after having in possession for more than
two years a deed to a lot on which he had paid $800 for a certain
definite lot, to wit, lot number 9 of block 8 upon a certain plat
which was a public record at the time he purchased. He now comes
into court and asks that by parol evidence he be permitted to sub-
stitute a contract entirely different from that contained in the
writing, for which he paid in part, and into which all of the prior
oral negotiations are by law presumed to have been merged. The
court correctly dismissed the petition.

*Judgment affirmed. All the Justices concur.*

ATKINSON, GILBERT, and HINES, JJ., concur in the result.

HINES, J. On June 12, 1925, Feingold, a resident of Albany,
Georgia, was in Lakeland, Florida. Jack Yetter, the agent and
salesman of McDonald Mortgage & Realty Company, approached

Feingold and proposed to sell to him a certain lot in Biltmore Park, a subdivision of Lakeland. He took Feingold out to the subdivision, and pointed out to Feingold the lot which he proposed to sell to him for said company. The lot so pointed out was adjacent to a large two-story stucco residence building, costing at least the sum of $25,000, this residence being located at the southwest corner of Hollingsworth Road and Palmetto Street in said subdivision. It was situated on a lot at least 105 feet wide, fronting on Hollingsworth Road, and extending back a distance of approximately 260 feet to Clayton Avenue. The vacant lot pointed out by Yetter to Feingold was adjacent to said improved lot, and was of the same size and dimensions as the improved lot. The agent further represented to Feingold that this vacant lot so pointed out was the only unsold lot in Biltmore Park; that it had a market value, according to the price at which other lots in said subdivision had been sold of recent date, of at least $5000; that the adjoining lot, on which the above residence was erected, had sold for $7000; and that in view of the fact that this was the one remaining lot said company would sell the same to Feingold for $3300. Yetter was familiar with real estate values, market prices, and the desirability of location of lots, as he resided in Lakeland, had experience in such matters, and represented himself to be an expert in real estate; while Feingold was unfamiliar with these matters. Under said inducements and representations, Feingold purchased the particular vacant lot shown to him, adjoining said residence; and but for said representations he would not have entered into the contract. Said representations were false and fraudulent, were made with intent to deceive Feingold, were knowingly false, and were material. On said day Feingold paid $330 on the purchase of said lot, and on or about July 14, 1925, paid the additional sum of $660, when McDonald Mortgage & Realty Company sent him a deed describing the property purchased as "lot nine (9), block eight (8) of Biltmore Park, a subdivision of Lakeland, Florida, according to plat of said subdivision recorded in Plat Book 8, page 41, of the records of Polk County, Florida," and Feingold executed to said company a mortgage on said lot as described in said deed, to secure five notes of $495.00 each, payable 1, 2, 3, 4, and 5 years after date. After receiving the deed Feingold did not make any further investigation until in January, 1927, when he decided he would try to sell the lot.

He took to Lakeland, Florida, a prospective purchaser to see the lot, when it was first discovered by him that the lot described in his deed was not the lot which he purchased, was not located next to the improved property on the corner as hereinbefore stated, and was not of the size and dimensions as herein stated, but was located further south a distance of approximately 300 feet; and lot 9 in block 8, by reason of its location, was not worth as much as the lot adjoining said dwelling at the southwest corner of Hollingsworth Road and Palmetto Street, the lot shown petitioner having a valuation of $1500 more than said lot 9. Feingold made other investigations at this time, and ascertained that Yetter had misrepresented the facts in other particulars, namely, that the lots in said subdivision had not been sold, that the prices of those sold were not as represented, and that the improved lot above mentioned did not sell for $7000 as represented. Upon discovery of this fraud, August 11, 1927, Feingold tendered back to the McDonald Mortgage & Realty Company its deed and lot 9, and offered to rescind, which offer that company refused to accept. On August 23, 1927, said company filed suit against Feingold on two of his notes; whereupon Feingold made a tender to the attorneys of record of said company of its deed to the lot embraced in said deed to him. There were no stakes, marks, or lines evidencing or locating the lot shown Feingold, or any other lots in said subdivision; and he had no way or means of ascertaining the boundary lines and the size and dimensions of the lot which was offered to him, except the statements made by the agent and salesman of said company. No plat or map of said subdivision was exhibited by Yetter or said company to Feingold at the time of said sale, or at any other time. On September 2, 1927, Feingold instituted this proceeding to enjoin the action brought by said company against him on his two notes, and to rescind the trade. The judge sustained the company's demurrer, and Feingold excepted.

1. Fraud voids all contracts. Civil Code (1910), § 4254. Fraud by which the assent of a party has been obtained to a contract of sale voids the contract. § 4112. Fraud will authorize a court of equity to annul conveyances, however solemnly executed. § 4629. A contract may be rescinded at the instance of the party defrauded, if promptly upon the discovery of fraud he restores or offers to restore to the other whatever of value he has received by virtue of

the contract. § 4305; *East Tennessee &c. Ry. Co.* v. *Hayes,* 83 *Ga.* 558 (10 S. E. 350). Fraud may exist from misrepresentation by either party, made with design to deceive, or which does actually deceive the other party; and in the latter case such misrepresentation voids the sale, though the party making it was not aware that his statement was false. Civil Code, § 4113. Misrepresentation as to a material fact, made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently, and acted on by the opposite party, constitutes legal fraud. § 4623. So in this case, if the defendant, through its selling agent, pointed out and proposed to sell to the plaintiff, and the plaintiff agreed to buy, a lot adjoining a large two-story, stucco residence, costing at least $25,000, the residence being located at the southwest corner of Hollingsworth Road and Palmetto Street in Biltmore Park, a subdivision of Lakeland, Florida; and if in consummation of such trade, and without the knowledge of the purchaser, the defendant by deed conveyed to the purchaser a different lot in said subdivision, located at a distance from said lot which the purchaser agreed to buy, and of much less value than the lot pointed out by the agent to the purchaser, the latter supposing and believing that he was receiving a deed to the lot pointed out to him and which he agreed to purchase, such transaction constituted a gross fraud upon the purchaser; and the purchaser would be entitled to rescind said trade, if he acted promptly upon the discovery of the fraud. This case is controlled by the decision in *Cohron* v. *Woodland Hills Co.,* 164 *Ga.* 581 (139 S. E. 56).

2. The duty rests upon a party who seeks to rescind a contract upon the ground of fraud, to make such effort to discover the fraud as would amount to ordinary diligence in law. *Massachusetts Benefit Association* v. *Robinson,* 104 *Ga.* 256, 272 (30 S. E. 918, 42 L. R. A. 261); *Reynolds &c. Co.* v. *Martin,* 116 *Ga.* 495 (42 S. E. 796). *Cohron* v. *Woodland Hills Co.,* supra. Equity gives no relief to one whose long delay renders the ascertainment of the truth difficult, though no legal limitation bars the right. Civil Code (1910), § 4536. It can not be held as a matter of law that the plaintiff is precluded, by his delay and laches in discovering the fraud, from prosecuting his suit for rescission. The property purchased is in Florida. The purchaser lived in Georgia. The lot purchased was a vacant lot. No facts are alleged which tend to show

that the plaintiff had any reason to believe that his deed did not convey the lot which he contracted for and purchased. Furthermore, "Relief may be granted even in cases of negligence by the complainant, if it appears that the other party has not been prejudiced thereby." · Civil Code, § 4571; *Green* v. *Johnson,* 153 *Ga.* 738, 739 (113 S. E. 402). In this case the vendor will not be legally prejudiced by the relief sought by the plaintiff.

3.  "A contract may be rescinded at the instance of the party defrauded; but in order to the rescission he must promptly, upon discovery of the fraud, restore or offer to restore to the other whatever he has received by virtue of the contract, if it be of any value." Civil Code (1910), § 4305. In order to exercise the right of rescission of a contract for fraud, the defrauded party must act promptly on the discovery of the fraud, and must restore or offer to restore whatever he has received by virtue of the contract, if of any value. *Couch* v. *Crane,* 142 *Ga.* 22 (7) (82 S. E. 459); *Hinkle* v. *Hinkle,* 148 *Ga.* 250 (3) (96 S. E. 340). The word "promptly," as used in § 4305, does not mean "immediately," but means within a reasonable time. *Kerr Glass Mfg. Co.* v. *Americus Grocery Co.,* 13 *Ga. App.* 512 (79 S. E. 381); *Stovall* v. *McBrayer,* 20 *Ga. App.* 93 (92 S. E. 543). The party must proceed with his offer to restore what he has received, with that promptitude which the nature of the case and environment of the circumstances would require, as manifesting an intention to treat, upon the discovery of the fraud, what he has received as the property of the other party. *Jordy* v. *Dunlevie,* 139 *Ga.* 325 (77 S. E. 162). In the case last cited, a delay of 16 months after the discovery of the fraud, in making an offer to restore to the other party the consideration of the contract of which rescission was sought, was held to be such laches as barred the plaintiff's action, no sufficient excuse for the delay being alleged. In his petition plaintiff alleges that upon the discovery of the fraud, in January, 1927, he offered to rescind the contract of purchase and return to the vendor the deed which it had made to him to lot 9, and all right, title, and interest or equity of petitioner in and to said lot, which offer the vendor refused. By an amendment the plaintiff alleges that he offered to rescind on August 11, 1927, which offer was refused by the vendor on August 18, 1927. Construing together the allegations of the petition and the amendment, the offer of restitution was not made until August

11, 1927. Plaintiff discovered the fraud which had been perpetrated upon him, in January of that year. He delayed from January until August 11, in making his offer of restitution. He alleges no excuse for this delay. In these circumstances the trial judge properly sustained the demurrer, as the petition does not allege that the plaintiff promptly offered to make restitution upon the discovery of the fraud, and as the unexcused delay of the plaintiff in making an offer of restitution from January, 1927, until August 11, 1927, bars his right to rescission.

4.   While the principle that "An entirely different contract from that evidenced by writing can not be pleaded or proved by parol as a substitute for that embodied in such writing," is a correct principle of law, it is inapplicable under the facts of this case. Petitioner was not seeking to set up a contract different from that evidenced by his deed, but was undertaking to show that the contract, as evidenced by the deed, was void because of fraud. As we have seen, "Fraud voids all contracts." "Fraud will authorize a court of equity to annul conveyances, however solemnly executed. Civil Code (1910), § 4629. Parol evidence is always admissible to show the fraud. Otherwise it would be impossible to annul any deed because obtained by fraud. I concur in the judgment sustaining the demurrer to the petition, solely upon the ground that it does not allege that the plaintiff, upon the discovery of the fraud which had been practiced upon him, promptly offered to restore and reconvey the land conveyed to him by the defendant, but on the contrary shows that the plaintiff waited from January until August 11, to offer to rescind, this delay of over six months being wholly unexplained. In these circumstances the plaintiff will be left to his remedy at law, for damages. I dissent, however, from the propositions of law stated in the headnotes, because they are either incorrect statements of law, or correct statements of law inapplicable under the facts of this case.