The judgment is affirmed for reasons set out in the opinion.
 DECIDED MARCH 9, 1944.
The State Department of Revenue issued an income-tax fi. fa. against King Brothers Motor Company Inc., of Waycross, Georgia, for the principal sum of $431.39, plus $94.52 interest, alleged to be due the State of Georgia on unpaid income tax for the fiscal year ending June 30, 1935. The corporation denied liability. The case was tried upon an agreed statement of facts by the court without the intervention of a jury. The judge rendered judgment in favor of the defendant. To this judgment and ruling the Department of Revenue filed a direct bill of exceptions. *Page 742 
The agreed facts are in substance as follows: "That on or about July 7, 1931, the defendant corporation, King Brothers Motor Company Inc., was organized under the laws of this State and the capital stock of said corporation was issued as follows: Preferred stock — par value $25 per share, 8 per cent. Cumulative: Mrs. Lora B. King, 40 shares, $1000; J. H. King Jr., 40 shares, $1000; total preferred stock, $2000. Common stock — par value $100 per share: Mrs. Lora B. King, 40 shares, $4000; J. H. King Jr., 39 shares, $3900; Mrs. J. H. King Jr., 1 share, $100; total $8000.
"Previous to the formation of defendant corporation, J. H. King Jr., and Mrs. Lora B. King were engaged in a similar business as a copartnership, and on July 7, 1931, the partnership sold and conveyed all of its assets to the defendant corporation. A copy of this instrument is hereto attached and marked exhibit A and made a part of this stipulation." For convenience we insert this exhibit at this point: "This agreement and bill of sale made this the 7th day of July, 1931, by King Brothers Motor Company, a copartnership composed of J. H. King Jr., and Mrs. Lora B. King, both of Ware County, Georgia, parties of the first part, and King Brothers Motor Company, a corporation of Ware County, Georgia, party of the second part: Witnessed, that the said parties of the first part, for and in consideration of the sum of $170,000 to them to be paid as hereinafter provided and stipulated, and for the payments, agreements, covenants, terms and conditions that are to be made, done, and performed by the said King Brothers Motor Company, a corporation, have this day bargained and sold and do hereby bargain, sell and deliver unto the said King Bros. Motor Co., a corporation, its assigns and successors, all of the following described personal property, to wit: the business and general automobile agency located in the City of Waycross, Ware County, Georgia, and known as King Brothers Motor Company, and being described generally as being promissory notes, accounts, mortgages, conditional-sale contracts, assignments, judgments, liens, security deeds, chooses in action, new automobiles, second-hand automobiles, trucks, automobile accessories, repair parts, the entire stock of goods and merchandise of said King Brothers Motor Company, automobile tires and tubes, batteries, tools, shop equipment, all shop fixtures, machinery, gasoline service-station equipment, all office furniture and fixtures, including safes, adding machines, typewriters, bookkeeping *Page 743 
machines, books, office supplies, air pumps, cash registers, Fordson tractors and tractor equipment and repair parts, and tractors attachments, show cases, automobile paint-shop fixtures and equipment, together with all other personal property of every kind and description connected with and being a part of the chattels and personal property of the business of said King Brothers Motor Company, A copartnership, and being located at the plant or place of business of the said King Brothers Motor Company, located at the southwest corner of the intersection of Jane and Tebeau Streets, in the City of Waycross, Ware County, Georgia, with the exception of all stocks in other corporations or banks and bonds held by the parties of the copartnership of said King Brothers Motor Company. The said King Brothers Motor Company, a corporation, acting through its officers, will issue to the said J. H. King Jr., $5000 of its capital stock, and shall also issue $5000 of its capital stock to the said Mrs. Lora B. King, for part of the consideration of the purchase-price of the above described property and business, and the balance of said purchase-price of $160,000 will be evidenced by one certain promissory note made by said corporation of King Brothers Motor Company, party of the second part, dated July 7, 1931, for the sum of $85,000, payable to the said Mrs. Lora B. King, bearing interest from date at 6 per cent. per annum, and due to ten years from date thereof, and also one certain promissory note made by said King Brothers Motor Company, a corporation, to J. H. King Jr., for the sum of $75,000. dated July 7, 1931, bearing interest from date at the rate of 6 per cent. per annum and due ten years after date, both of which said notes will be secured by a mortgage on the above described property, with the provision in said mortgage that whereby the lien of said mortgage shall attach to all replacements and additions to the business of King Brothers Motor Company Inc., in any manner. However, respecting the payment of interest it is understood and agreed by all parties hereto that in no event shall the interest provided to be paid as aforesaid on said notes be more than the net profits of said corporation in any one year, not exceeding 6% — that is to say, if the net profits shall be paid as interest for said period, if greater than only 6% shall be paid as interest, and if there shall be no net profits for said period, then no interest shall be paid, anything *Page 744 
in the notes to the contrary notwithstanding, and said interest shall be non-cumulative; and the liability of the party of the second part for such interest on said notes, or either of them, for any one year, shall accrue as of the date representing the closing of the corporation's books for the fiscal year immediately preceding, and shall not require further approval on the part of the board of directors, or any other officers, of said King Brothers Motor Company Inc. The above described property is purchased by the said party of the second part from the parties of the first part, after full inspection and examination, and the said parties of the first part do not make any warranties of any kind or character, either expressed or implied, concerning the said property herein conveyed, except they warrant title to same. In addition to the consideration herein before recited in this bill of sale, as a part of the consideration of this bill of sale, the said party of the second part, King Brothers Motor Company, as a copartnership, and the said King Brothers Motor Company, a corporation, as a part of the consideration of this bill of sale hereby assumes and agrees to pay all liability of every kind or any torts or rights of actions of every kind that may be outstanding or come against the said partnership business of King Brothers Motor Company, or against the said parties of the first part, growing out of the conduct of the partnership business of King Brothers Motor Company. It is understood and agreed between all parties to this bill of sale that the same is being made subject to a security deed or bill of sale to secure debt heretofore made by the said Mrs. Lora B. King to her one-half interest in the assets of the partnership business of King Brothers Motor Company. It is understood and agreed between all parties to this bill of sale that the same is being made subject to a security deed or bill of sale to secure debt heretofore made by the said Mrs. Lora B. King, conveying her one-half interest in and to the assets of the partnership business of King Brothers Motor Company to J. H. King Jr., administrator of the estate of G. R. King, deceased, and the said Mrs. Lora B. King agrees to pay the indebtedness secured by said lien in favor of said J. H. King Jr., administrator. The above described personal property and business is conveyed as a going concern, and it is the intention and purpose of this conveyance to convey the name of King Brothers Motor Company, together with the good will of same, unto said corporation of King Brothers Motor Company." *Page 745 
We continue with the stipulation of facts: "That on July 7, 1931, the defendant corporation issued its promissory notes to Mrs. Lora B. King and J. H. King Jr., respectively, copies of said notes being hereto attached as exhibit B and made a part of this stipulation." Exhibit B reads as follows: "On July 7, 1941, after date, King Brothers Motor Company, a corporation, acting through its proper officers, do promise to pay to the order of J. H. King Jr., the sum of $75,000, at Waycross, Georgia, for value received, with interest from date at the rate of 6% per annum until paid, with the exception hereinafter stated, with all cost of collection, including 10% as attorney's fees, if collected by law or through an attorney at law after maturity, same to be paid in gold coin or any lawful money acceptable to the holder of this note. This note is given by the said King Brothers Motor Company, a corporation, for the balance of the purchase-money or price of the interest and equity of the said J. H. King Jr., in the assets of the former partnership of King Brothers Motor Company of Waycross, Georgia, and being the promissory note referred to in a certain chattel mortgage, or bill of sale to secure debt this day executed by the maker of this note to J. H. King Jr., and Mrs. Lora B. King, and the terms of said mortgage relative to the interest to be paid on this note shall be applicable to this note, that is, that the maker of this note shall not be liable for interest on said note for any year in any amount in excess of the net profits of the said King Brothers Motor Company, a corporation, and any other terms, restrictions, and provisions stipulated in said mortgage shall be applicable to this note; and the maker of this note hereby waives demand, protest, and notice of demand, protest and non-payment; and further that the interest provided for in said note shall be non-cumulative." A similar note was executed to Mrs. Lora B. King for $85,000.
We proceed with the stipulation of facts: "That on July 7, 1931, the defendant corporation executed an instrument to J. H. King Jr. and Mrs. Lora B. King, a copy of said instrument being hereto attached marked exhibit C and made a part of this stipulation." Exhibit C reads as follows: "This indenture, made this the 7th day of July, 1931, between King Brothers Motor Company, a corporation under the law of the State of Georgia, with its principal office in the City of Waycross, County of Ware, and State of Georgia, of the first part, and J. H. King Jr. and Mrs. Lora B. King, *Page 746 
of the County of Ware and State of Georgia, of the second part: Witnesseth: That the party of the first part for and in consideration of the sum of $1.00 in hand paid, as well as for the purpose of securing the indebtedness hereinafter mentioned, at and before the execution of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold and conveyed, and by these presents does grant, bargain, sell and convey unto said parties of the second part, their heirs, executors, administrators and assigns, the following described personal property to wit: [Here follows description of personal property conveyed as shown in exhibit A herein before set out]. As the assets of the said business of King Brothers Motor Company, a corporation, shall change in specifics, it is understood and agreed that this mortgage lien shall attach to all replacements, additions and increases of every kind and description, and is intended at all times to be a lien on all the assets of said corporation, including notes, accounts, stock and merchandise, furniture, fixtures, equipment, bills of sale, bills of sale to secure debt of said corporation. To have and to hold the said bargained property with the rights, members, and appurtenances to the same belonging or appertaining to the only proper use, benefit, and be hoof of the parties of the second part, their heirs, executors, administrators, and assigns, forever. And the party of the first part for itself, its successors and assigns, will warrant and forever defend the right and title of the above described property unto the said parties of the second part, their heirs, executors, administrators and assigns, against the claims of all persons whomsoever. This conveyance is to be construed as a bill of sale passing title and not as a mortgage, and is made under the provisions of the existing Code of Georgia, and is made to secure a debt of $160,000 of the party of the first part to the parties of the second part, as evidenced by two certain promissory notes bearing even date herewith, one of said notes for $85,000, payable to Mrs. Lora B. King, and the other for $75,000, payable to J. H. King Jr., each bearing interest from date at the rate of 6% per annum, or as hereinafter stipulated, and each due July 7, 1941, which said indebtedness so evidenced by said promissory notes is a part of the purchase-price of the above described property purchased by the said King Brothers Motor Company, a corporation, as stated first aforesaid from King Brothers Motor Company, a copartnership composed of J. *Page 747 
H. King Jr. and Mrs. Lora B. King, and this bill of sale to secure debt is given to secure the payment of the balance of the purchase-price of the interest and equity of the said J. H. King Jr. and Mrs. Lora B. King in the partnership business of King Brothers Motor Company. It is understood and agreed by the parties hereto that notwithstanding the said notes hereinabove described provide for the payment of interest at 6% per annum from date, yet in no event shall the interest provided to be paid as aforesaid on said notes be more than the net profits of said corporation in any one year, that is to say, if the net profits shall be less than 6% in any one year then only that amount should be paid as interest for said period, and if there shall be no net profits for any such period, then no interest shall be paid, anything in the notes to the contrary notwithstanding, and said interest shall be non-cumulative; and the liability of the party of the first part for such interest on said notes, or either of them, for any one year, shall accrue as of the date representing the closing of the corporation's books for the fiscal year immediately preceding, and shall not require further approval on the part of the board of directors, or any other officers, of said King Brothers Motor Company Inc., party of the first part herein. This indenture is also intended to and does hereby secure all renewals of the indebtedness aforesaid, any extensions or assignments of this indenture, or either or both of said notes, shall not waive any condition herein contained."
We continue the stipulation of facts: "That during the taxable year ending June 30, 1935, defendant corporation for that fiscal year paid the sum of $10,200 out of the net income of the corporation for that fiscal year to J. H. King Jr. and Mrs. Lora B. King. It is this item which is in dispute between the parties. Defendant-corporation takes the position that the payment of the said $10,200 out of the net income to J. H. King Jr. and Mrs. Lora B. King was a payment of interest on the part of the defendant-corporation and was therefore deductible under the income-tax laws of this State from its gross income. The Department of Revenue takes the position that the payment of the said $10,200 under the facts stated was a dividend payment by the corporation and therefore not deductible from its gross income. During the taxable year involved, J. H. King Jr. was president of the defendant-corporation, and Mrs. Lora B. King was secretary and treasurer, and outside of *Page 748 
the one share of common stock owned by the said Mrs. J. H. King Jr., these two parties owned the entire capital stock of said corporation. The said Mrs. J. H. King Jr. is the wife of J. H. King Jr. It is further agreed that if the contentions of the State of Georgia are correct, the amount of tax due is that stated in the fi. fa., to wit, $431.39 principal, and $94.52 interest to date of issuance of execution, plus interest from date of execution to date of payment as provided for by statute. It is also agreed that if the contentions of the taxpayer are correct, no tax at all is due in this manner. It is further agreed that the court may try all issues of law and fact without the intervention of a jury."
1. We have set forth the facts applicable to the case somewhat in detail in order to better illustrate the question for determination. It is conceded by both parties that if the $10,200 is interest, under the law there are no taxes due. While on the other hand, if under the agreed statement of facts that sum is stock dividend, the taxes are due. At the outset it will be recognized that (a) the charter for incorporation was usual and legal; that (b) if there was anything illegal in the acquisition by the corporation of the assets of the partnership, such is not pointed out; that (c) the notes executed by the corporation to the two members of the corporation to purchase the assets of the partnership were executed in conformity with our law; that (d) the bill of sale (or security deed) executed by the corporation to the individual members of the partnership to secure the payment of the purchase-price of the stock in trade was the customary and lawful method used daily in commercial barter and trade for transactions similar to the transaction in question; that (e) the fact that as a part of the consideration for the transfer of the assets of the partnership to the corporation, a part payment for such assets was to be in stocks of the corporation is also a common practice and not unusual; but (f) it is contended by the State Department of Revenue that since the partners acquired from the corporation all of its stock as a part consideration for the assets, and became the officers and controlling force in the corporation, to limit the interest on the debt to six per cent., provided the corporation earned that *Page 749 
much, and to forego interest to the extent of less than six per cent. on the remaining amount, established the transaction as one of dividend and not one of interest on indebtedness.
This brings us to the consideration whether the transaction resulted in one of dividend on stock rather than interest on indebtedness. It is noted that no incident in the organization is challenged for fraud. All of the transactions as between the partnership and the corporation were open and legal. Nothing was concealed, no challenge of value raised. We are not without precedent of cases based on facts of similar import to the situation here involved to the effect that the $10,200 is to be considered interest on indebtedness rather than dividend on shares of stock. We are of the opinion that the decision of the Supreme Court in Savannah Real Estate, Loan Building Co. v.Silverberg, 108 Ga. 281, 287 (33 S.E. 908), is based upon facts sufficiently similar to the instant case to be controlling. That decision has been the basis of discussion in several decisions since that time. See Jefferson Banking Co. v.Trustees of Martin Institute, 146 Ga. 383 (91 S.E. 463);Equitable Building Loan Association v. Brady, 171 Ga. 576
(156 S.E. 222); O'Neal v. Automobile Piston Parts Co.,188 Ga. 380, 385 (4 S.E.2d 40). While the decisions since theSilverberg case do not deal with facts so similar to those in the instant case, they do discuss the question before us, and serve to crystallize and reaffirm the soundness of the question discussed in the Silverberg case. In that case the court said: "It seems to be clear from the certificate, though not in express terms so stated, that what is therein called the dividend of eight per cent. is not to be paid absolutely and at all events but simply in the event the corporation earns a sufficient amount to pay to each holder of such certificate that amount. This stipulation rather indicates that the holder would be a member of the company. The use of the word `dividend' and the language of the certificate dealing with what it calls a dividend is language peculiarly appropriate to a certificate of stock. It is declared that `this preferred stock is accumulative, but does not participate in any dividends or profits on the common capital stock over and above said eight per cent. dividend.' While the holder is deprived of the right to vote, he is given the right to attend all the meetings of the stockholders. On the other hand, it is distinctly provided that the amount specified in the certificate shall *Page 750 
be paid on a given date, and the right is reserved to pay the same, upon notice to the holder, upon a day earlier than the day fixed in the certificate. The stipulation that the entire issue shall be `retired' on January 1st, 1987, and that the company may `retire the same or any part thereof at any time after two years from date,' upon giving notice of the character therein provided for, are stipulations indicating an intention to make a contract under which one party was to receive the money for use in its business and return the same in any event at a designated time and earlier if desired, paying to the person whose money was thus used as interest thereon a certain proportion of the earnings made by the borrower in a given enterprise, the amount of the interest thus to be paid for the loan of the money depending upon the success of the enterprise in which the borrower was to use the money. . . Looking at the substance of the contract now under investigation, our final conclusion is that the relation of lender and borrower arose between the parties, and that the paper issued at the time the money was advanced, although in its from it appears to be a certificate of stock, is in fact and in substance simply an evidence of indebtedness, which the holder has a right to enforce against the person executing it." It is contended by the Department of Revenue that since the indebtedness is due to the controlling stockholders, it is conclusive that the so-called interest was in fact stock dividends. With this view we are unable to agree. Our State income-tax law is similar to the Federal income-tax law. While we are not bound in this State by the construction of the statute which the Federal government might place upon it, we might adopt it with a feeling of confidence. In Commissioner of Internal Revenue v. T. R. Miller Mill Company, 102 Fed. (2d) 599, a similar question arose under the following facts: The corporation declared a $500,000-surplus dividend to its stockholders. At the same time the corporation was authorized to borrow $500,000 from the stockholders or trustees representing stockholders. The stockholders authorized the trustees to lend this $500,000 to the corporation for one year, by taking a note from the corporation due in one year at six per cent. interest per annum. The principal was not paid at maturity, but each year the stockholders did receive, according to their pro rata shares of stock held in the corporation, their pro rata share of the $30,000 interest on the note. This arrangement *Page 751 
continued from 1927 to the years 1932 and 1933. It was contended by the Commissioner of Internal Revenue that the arrangement between the corporation and its stockholders constituted a relationship of that of stockholder of the corporation, and not that of debtor and creditor, and disallowed the $30,000 deducted as interest. The Board of Tax Appeals found against the commissioner. The commissioner then appealed to the Circuit Court of Appeals of the fifth circuit, which held: "The question presented is whether the $30,000 paid by the taxpayer to the stockholders' trustees represented interest paid on indebtedness. The statute involved provides, among other things, that in computing net income there should be allowed as deductions `All interest paid or accrued within the taxable year on indebtedness, . .' Revenue Act of 1932, c. 209, 47 Stat. 169, 179, § 23 (b), 26 U.S.C.A., § 23, note. [1] There is no comprehensive rule by which the question of deducibility may be decided in all cases. Whether the payments involved represent interest on indebtedness depends upon the relationship of the parties. The fundamental consideration is whether the arrangement under which the taxpayer paid $30,000 each year to the trustees gave rise to the relationship of debtor and creditor. Commissioner of Internal Revenue v. Proctor Shop Inc., 9 Cir., 82 Fed. 2d, 792. [2] The note given by the corporation to the stockholders' trustees on its face represents an unconditional promise to pay $500,000 and interest. The mere fact that the note was not paid when due does not change the character of the obligation. The company had legally declared a dividend. The stockholders authorized their trustees to receive the dividend. The $500,000 note given to the trustees in payment of the dividend was binding on the company and created the relationship of debtor and creditor. We are of the opinion that the payments of $30,000 were clearly payments of interest on an indebtedness, and therefore deductible under the provisions of Sec. 23 (b), Revenue Act of 1932. The petition is denied and the judgment of the board is affirmed." Considering the contention in the instant case that the six per cent. interest was to be paid from net profits, it is our opinion that this arrangement did not destroy the relationship of debtor and creditor. We find in the case of Commissioner of Internal Revenuev. O. P. P. Holding Corporation, 76 Fed. (2d) 11, involving debenture bonds the commissioner strictly construed the instruments involved *Page 752 
there as certificates of preferred stock and not as evidences of indebtedness. The court held: "We do not think it fatal to the debenture-holder's status as a creditor that his claim is subordinated to those of general creditors. The fact that ultimately he must be paid a definite sum at a fixed time marks his relationship to the corporation as that of creditor rather than shareholder. The final criterion between creditor and shareholder we believe to be the contingency of payment. The shareholder is entitled to nothing, prior to liquidation, except out of earnings. Even on liquidation, at least in New York, arrears of cumulative dividends are confined to earnings. . . The petitioner urges that the name given to an instrument is not controlling, but that its inherent characteristics will determine its true nature and legal effect. This may be conceded, but it does not follow that the name by which the certificates are designated is to be completely ignored. Stocks and bonds both evidence a contract between their holders and the issuing corporation, and, in construing this contract, the language used in reducing it to writing will be indicative of the intention of the parties."
In this connection we would like to call attention to a case from the Supreme Court of the United States. In Old Colony Railroad Co. v. Commissioner of Internal Revenue, 284 U.S. 552,563 (52 Sup. Ct. 211, 76 L. ed. 484), that court held: "And as respects `interest,' the usual import of the term is the amount which one has contracted to pay for the use of borrowed money. He who pays and he who received payment of the stipulated amount conceives that the whole is interest. In the ordinary affairs of life no one stops for refined analysis of the nature of a premium, or considers that the periodic payment universally called `interest' is in part something wholly distinct, that is, a return of borrowed capital. It has remained for the theory of accounting to point out this refinement. We cannot believe that Congress used the word having in mind any concept other than the usual, ordinary, and everyday meaning of the term, or that it was acquainted with the accountants' phrase `effective rate' of interest and intended that as the measure of the permitted deduction. . . In short, we think that in the common understanding `interest' means what is usually called interest by those who pay and those who receive the amount so denominated in bond and coupon, and that the words *Page 753 
of the statute permit the deduction of that sum, and do not refer to some esoteric concept derived from subtle and theoretic analysis. If there were doubt as to the connotation of the term, and another meaning might be adopted, the fact of its use in a tax statute would incline the scale to the construction most favorable to the taxpayer." If it might be conceded (and there is nothing whatever to indicate that such is the purpose) that the transition of the business in the instant case was to put it in a class less expensive in so far as taxes were concerned, we still do not think we could look to this as a reason to conclude that the relation of debtor and creditor should be ignored even though it legally existed. Would it not be reasonably expected that one operating his business in a certain channel would change into a different channel if he could legitimately do so in the manner and form others were operating, if it would be more profitable to do so? We think this course is practiced and is permissible. Too, this idea is not new, and is based on authority. We refer to Chrisholm v. Commissioner of Internal Revenue, 79 Fed. 2d, 14, in which we find the following: "A man's motive to avoid taxation will not establish his liability if the transaction does not do so without it. . . The question always is whether the transaction under scrutiny is in fact what it appears to be in form; a marriage may be a joke; a contract may be intended only to deceive others; an agreement may have a collateral defeasance. In such cases the transaction as a whole is different from its appearance. True, it is always the intent that controls; and we need not for this occasion press the difference between intent and purpose. We may assume that purpose may be the touchstone, but the purpose which counts is one which defeats or contradicts the apparent transaction, not the purpose to escape taxation which the apparent, but not the whole, transaction would realize." See also Jones v. Page, 102 Fed. (2d) 144.
2. The Department of Revenue cites many cases defining "dividend" and "interest" to sustain its position to the effect that the transaction before us is one which should be construed as that of shareholder and not of creditor. Among these cases will be found Coggeshall v. Georgia Land Investment Co.,14 Ga. App. 637, 639 (82 S.E. 156); Jefferson Banking Co. v.Trustees of Martin Institute, supra; Untermyer v.
Commissioner of Internal Revenue, 59 Fed. (2d) 1004; Waggamanv. Helvering, 78 Fed. (2d) 721; *Page 754 
Pennington v. Commonwealth Hotel Construction Co., 17 Del. Ch. 394
(155 A. 514); Harris v. Allen, 18 Ga. 177; and many others, some of which are not apparently in complete harmony with what we hold. But in view of the reasoning of our own appellate courts, particularly in the Silverberg case, supra, we feel that we have advanced the better view; that the relationship, under the facts of the instant case, is that of debtor and creditor and the $10,200 is deductible as expenses and not subject to taxation as a dividend payment.
It is contended by the Department of Revenue that the case ofState Revenue Commission v. Glynn, 61 Ga. App. 567
(6 S.E.2d, 384), is controlling. The ruling in that case is based on subsection (d) of the Code, § 92-3109. This subsection deals with losses. The facts in the Glynn case are to the effect that upon the dissolution of a corporation a stockholder will not be permitted to deduct his losses under subsection (d), supra. The questions there and here are dissimilar.
The court did not err in finding that the relationship was that of debtor and creditor.
Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.